Richardson, J.,
delivered tbe opinion of tbe court:
Tbis action is founded on tbe Act March 12, 1863 (12 Stat. L., 820), wbicb, after making provision for tbe appointment of special agents “ to receive and collect all abandoned or captured *9 property in. any State or Territory, or any portion of any State: or Territory, of tbe United States designated as in insurrection against tbe lawful government of tbe United States by the-proclamation of tbe President of July 1, 1862,” also provides • that “ any person claiming to bave beep, tbe owner of any such abandoned or captured property may, at any time witbin two • years after tbe suppression of tbe rebellion, prefer bis claim to tbe proceeds thereof in tbe Court of Claims, and on proof to tbe satisfaction of spid court of bis ownership of said property, of bis right to tbe proceeds thereof, and that be has never given any aid .or comfort to tbe present rebellion, to receive tbe residpe of such proceeds,” after certain deductions therein specified.
Tbe pleadings are in some respects inartistically and incorrectly drawn, but if tbe facts proved and found by tbe court, were such that an action could be maintained thereon witbin our jurisdiction, tbe court would allow such amendments as-might be necessary therefor, in order that substantial justice should not be defeated by matters of form or inadvertence of counsel.
Tbe original petition, in tbe name of George W. Hammer, which was apparently an error of tbe first attorney who appeared in tbe case and signed tbe petition for George W. Hammer, sets forth that in tbe month of April, A. D. 1865, be u was tbe owner and in possession of one hundred and twenty-six bales of upland cotton, of tbe aggregate weight of .69,3.00 pounds ; that on or about tbe 1st of May, A. D. 1865, tbe said one hundred and twenty-six bales of cotton were seized by tbe officers of tbe United States at Prairie Bluff, on the Alabama River,” in Alabama, turned over to an agent of tbe Treasury Department, sold, and tbe proceeds paid into tbe Treasury; and that be “ bad not in any way voluntarily aided, abetted, or given encouragement to tbe rebellion.”
This petition, duly sw.orn to by tbe attorney, was filed August 19, A, D. 1868, tbe last day on which owners of abandoned or captured property could by tbe terms of said act prefer their-claims in this court for .the proceeds thereof, it having been authoritatively determined that tbe final suppression of tbe rebellion witbin tbe meaning of this act took place August 20, 1868, upon the issuing of tbe President’s proclamation of that date, declaring “that tbe said insurrection is at an end, and, that peace, order, tranquillity and ciyil authority now .exist in *10 and throughout the whole of the United States of America.” (14 Stat. L., 817; Grossmeyer v. The United, States, 4 C. Cls. R., 14; Anderson v. United States, 9 Wall., 56, and 7 C. Cls. R., 121.)
On the 9th of January, 1873, George W. Hamner, who it may be inferred was the person in whose name the original petition was brought, and J.- 0. Hamner, the present claimant, with others, by their attorney, upon leave of court, filed an amendment to the petition, setting forth that they were the children and heirs-at-law of George If. Hamner who died intestate in the State of Alabama in June, 1868; that no administration had been taken on his estate, and that “ the lot of one hundred and twenty-six bales of cotton claimed in the petition was the prop-. erty of their said father, and was taken from his possession by the agents of the Treasury Department in the year 1865,” with no other allegations or amendments. And the facts show that the eight persons named, with one other whose name appears to have been inadvertently omitted, as it occurs in the motion for allowance of the amendment, were the only children and heirs-at-law of said George If. Hamner, deceased.
On the 30th of April, 1875, J. C. Hamner was appointed administrator of the estate of said George If. Hamner, deceased, and was admitted by the court in February, 1876, to file his letters of appointment and to be made claimant in the case as such administrator, but he filed no amended petition, and left the case to stand upon the former pleadings and allegations.
Thus it will be seen that it was more than seven years after the time allowed to owners of captured or abandoned property by the Act of March 12,1863, to prefer their claims in this court for the proceeds thereof in the Treasury, before the owner or any person legally representing the owner of the cotton described in the findings of facts preferred his claim therefor. If the original claimant intended to set up his own private claim to the cotton, as alleged in his petition under oath, it was a fraud upon the estate of George M. Hamner, deceased, the true owner, as well as on the defendants, who were entitled to have the ownership at the time of seizure, and then, certainly, if not now, the loyalty of such owner alleged and proved. (Carroll v. The United States, 13 Wall., 151; Villalonga v. The United States, 23 Wall., 43; Meldrim et al. v. The United States, 7 C. Cls. R., 595; Sierra v. The United States, 9 C. Cls. R., 233.)
And if the original petitioner was Geo. W. Hamner, the son and *11 one of tbebeirs of George M. Hamner, deceased, and he intended to set np the claim of his father’s estate, he was an intermed-dler, and his intermeddling was never afterward attempted to be ratified by his appointment as administrator; but another person was appointed to that trust, and now prosecutes this • claim. It does not appear that he had the slightest interest, directly or indirectly, in the cotton specified in the findings, or of possession thereof, or that he would ever have any benefit from a recovery in this action. There is only the possibility that on the settlement of his father’s estate something might be found due him as a distributive share thereof; the fact that there would be anything to distribute not being proved. This right to a possible balance in the hands of his father’s administrator, which might be increased by a recovery in this suit, gives him no interest in the specific chattels and choses in action of the intestate; to all which he was in law an entire stranger, with no more right to sue for the collection of debts due to his father than had any other stranger or intermeddler.
By the common law, as adopted probably in all or nearly all the States of the Union, which follow substantially that law, all the personal estate of a person dying intestate passes to his administrator, who is the personal representative of the deceased, and alone has the legal title to the goods, chattels, choses in action, and other personal property of his intestate, while the real estate passes by inheritance directly to the heirs-at-law. The children or next of Mn have no legal interest in the specific chattels and rights of action of the deceased; their rights to the personal estate being their respective distributive shares of the balance remaining in the hands of the administrator after the personal estate has been reduced to money, and the debts, funeral expenses, and the cost of administration have been paid. Until the administrator sells or transfers the title to specific articles of personal property, he may maintain trover against the next of Mn, as well as against any other persons, who convert the same to their own use.
And such is the statute law of Alabama, where the owner of the cotton described in the findings lived and died, except that provision is made for the distribution of whatever personal estate is left in the hands of the administrator after selling sufficient to pay debts, funeral expenses, and the expenses of administration, in land, among the next of Mn, by proceedings for a *12 division, or partition, as real estate may generally by statute-provisions b© divided among tbe beirs-at-law. Bnt until sucb division tbe administrator continues to bold tbe legal title, and. tbe next of kin do not become tbe owners.
In Kelley, administrator, v. Kelley’s Distributees (9 Ala., 908, it was beld that tbe grant of administration confers upon tbe administrator tbe legal title to tbe goods and chattels of tbe intestate, and that tbe husband of a sole distributee, who bad paid tbe debts of tbe estate and taken possession of the personal property, could not resist tbe recovery by tbe administrator.
And in Upchurch v. Norsworthy (12 Ala., 532), tbe court decided that tbe sole legatee has no right to tbe possession of tbe personal estate until the personal representative (tbe executor duly appointed) has assented to it, and if in possession of sucb legatee, it may be recovered by tbe personal representative when .appointed-
Tbe case of Sophia B. Moore v. The United States (10 C. Cls. R., 377), wherein this court sustained an action by a sole legatee and gave judgment in her favor for tbe proceeds of abandoned or captured property of her testator, differs from tbe cases we have cited and from this action, in that tbe estate of tbe deceased bad been fully settled and all bis property and rights of action bad passed to the claimant, and no objection was made against her right to maintain tbe suit as tbe sole legal owner of tbe claim. In tbe present case, tbe estate of George M. Harnner bad not been settled, and no administration was taken out thereon until 1875.
Besides, tbe original claimant did not in bis petition describe tbe co.tton in such manner as to show that it was tbe same property set forth in tbe findings; on tbe contrary, be laid claim to cotton which, if correctly designated, must have been other and different from that stated in tbe findings; tbe only designation of tbe property claimed in tbe petition being found in tbe allegation that be was tbe owner and in possession of one hundred and twenty-six bales of upland cotton, of tbe aggregate weight of 69,300 pounds, which “were seized by officers of tbe United States at Prairie Bluff,” Ala.; while tbe findings relate to one hundred and twenty-six bales of cotton owned and possessed by bis father, George M. Harnner, and do not show that they were one and tbe same lot as that first claimed.
*13 In this respect the case is like that of Mary W. Thomas v. The United States (12 C. Cls. R., 279), wherein the claimant alleged that he was “the owner and in possession of one hundred and twelve bales of cotton at her residence on her plantation,” and after the time limited for preferring claims under the act, and after the death of her husband, she sought to come in as the executrix; of her husband’s will to amend the petition, by declaring for the proceeds of a like quantity of cotton owned by her husband and in his possession on his plantation, and to prosecute the suit in her representative'capacity for said proceeds of his said cotton; and the court declined to grant her petition, as not warranted by the limitation of the statutes. And a similar decision was made in the casé of Mount v. The United States (11 C. Cls. R., 509). See also Lamar v. The United States (7 C. Cls. R., 603,) and Kidd v. The United States (8 C. Cls. R., 259). It is true that, in the case at bar, eight of the children and heirs-at-law of George M. Hamner, the owner of the cotton mentioned in the findings, did file an amendment, setting forth that the lot of one hundred and twenty-six bales of cotton claimed in the petition was the property of their father, and was taken from his possession; but this was January 9, 1873, more than four years after the time given to the owner of cotton seized to prefer his claim thereto, and it was more than three years after even that time before the true party appeared to assert his claim; for, although J. C. Hamner’s name appears in that amendment as one of the heirs, he had never been the owner of the cotton, was not the owner of the claim now prosecuted, and did not appear as the administrator of his father’s estate, as he now does.
• The case differs materially from those cases in which the court has admitted parties after the expiration of the two years’ limitation, wherein the property, the proceeds of which were sought to be recovered, was correctly described in the original peti-.tional filed within the proper time, and wherein the origihal petitioner appeared to be the real party beneficially interested, and who would receive the whole benefit' of the judgment recovered in the action. (Cowan v. The United States, 5. C. Cls. R., 106; Payne v. The United States, 7 C. Cls. R., 400.)
It was not until January 9,1873, that the records of this court .showed that the cotton mentioned in the findings, or any other cotton owned by or in possession of George M. Hammer, deceased, was claimed to have been seized by the defendants’ *14 officers and tbe proceeds paid into tbe Treasury, and not until February, 1876, that tbe representative of tbe owner appeared to claim tbe proceeds of said cotton and prosecute bis action tberefor; and it was too late at either date for anybody to compel tbe defendants to answer to any claims then first preferred in tbis court.
It is manifest that wbat bas been done in tbe case by way of amendments since August 20,1868, bas been practically to set up a new cause of action in favor of a newly-introduced party, and we bold that to be, in legal effect, first preferring tbe claim in tbis court after tbe time limited for bringing sucb an action under tbe Abandoned or captured property act.
It bas been determined by tbe Supreme Court in Haycraft v. The United States (22 Wall., 81, and 10 C. Cls. R., 95) that tbe provision requiring suits to be brought within two years after tbe suppression of tbe rebellion is not in tbe nature of a statute of limitation, but is jurisdictional, and if not complied with, tbe judiciary is without power to give redress. It would seem, therefore, that sucb a defect, being jurisdictional, cannot be waived by tbe defendants’ officers nor be overlooked by tbe court, even when not brought to its attention by plea or motion, nor overcome by amendments allowed without argument and full consideration. In other cases, some of which we have cited hereinbefore, amendments like, those in tbis case have been refused, when to admit them seemed to be taking jurisdiction of claims against which tbis comt bas been closed by statute -, and, if tbe claimant’s amendments ought to have been refused for the same reason, we are of opinion that be gained nothing by their admission, since tbe court cannot make for itself or acquire jurisdiction of an action, in which it bad none upon tbe original petition, by an amendment setting forth a new cause of action over which also its jurisdiction is excluded by statute.
Tbe amendments .cannot conceal tbe fact that tbe claim to which tbe findings apply was preferred to tbis court more than two years after tbe suppression of tbe rebellion nor override tbe bar imposed by law against sucb a claim.
Congress alone can grant relief to tbe claimant whom it bas thus excluded from tbis court.
For tbis reason tbe claimant’s petition is dismissed.