33 C.C.P.A.(Patents)

### In re POTTS.

Patent Appeal No. 5017.

*Court of Customs and Patent Appeals.*

June 27, 1946.

Dawson, Booth & Spangenberg, of Chicago, Ill. (Carl C. Batz, of Chicago, Ill., of counsel), for petitioner.

W. W. Cochran of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

January 7, 1946, we issued a written decision in this case which is an appeal from the decision of the Board of Appeals of the United States Patent Office sustaining the rejection by the examiner of five claims, numbered 8 to 12, inclusive, of appellant's application for patent directed to a process of preparing nitriles.

Our decision so issued affirmed the decision of the board.

In conformity with our practice, the decision was withheld from formal publication pending the exercise of appellant's right to petition for reconsideration.

Appellant filed a petition for reconsideration, and, by permission of the court, filed a brief therewith.

We have reconsidered the case and have concluded that we erred in affirming the decision of the board.

Accordingly, our original decision is withdrawn and this is presented in lieu thereof.

Claim 9 reads as follows:

"9. In a method for preparing aliphatic nitriles in which a fatty substance chosen from a group consisting of fatty acids of at least six carbon atoms and esters thereof is reacted at elevated temperatures with gaseous ammonia, the steps of introducing the vapor of said fatty substance and gaseous ammonia into a reaction chamber and in contact with a dehydrating catalyst, *introducing into contact with the chamber in heat transfer relation with the fatty substance and gaseous ammonia therein a vaporous heating medium having a boiling point between 570° F. and 700° F., said va-* *porous heating medium when introduced being at a temperature above the boiling point thereof,* whereby the reaction between the vaporous fatty substance and the gaseous ammonia proceeds and takes up heat within the chamber and a portion of the medium is condensed, the latent heat of vaporization of the medium causing heat to be imparted to the reaction chamber while the temperature of the chamber and the products therein is maintained at the boiling point of the medium, and withdrawing the condensate of the medium." (Italics supplied.)

The italicized clause constitutes the limitation upon which appellant relies for patentability, it being connected with the condensation feature as defined in the "whereby" clause immediately following it.

Each of the claims embraces the limitation so emphasized.

Drawings of appellant's application depict an apparatus for carrying out his process, as it is described in the specification. There is disclosed the feeding of fatty acids or esters thereof into a vaporizing chamber having a heating coil with a simultaneous feeding into the chamber of gaseous ammonia which mixes with the vaporized acids. The mixture is heated in the chamber to a temperature of 550° F. and is fed from the chamber into a catalyst chamber where it passes through tubes filled with a catalyst such as $Al_2O_3$. A heating fluid defined as diphenyl or diphenyl oxide, introduced through a pipe, surrounds the tubes and elevates the temperature of the mixed gases to a range of 570° F. to 700° F. The nitriles produced in the catalyst chamber are passed through a condenser and separator and finally pass out through a pipe, the excess ammonia passing out through another pipe.

The following references were cited: Dow 1,893,051 January 3, 1933; Nicodemus et al 2,037,389 April 14, 1936; Ralston et al 2,061,314 November 17, 1936; Andrews 2,120,538 June 14, 1938; British patent 451,594 August 5, 1936.

Concerning the references, the examiner stated:

"The *Nicodemus et al patent* of reacting fatty acids or esters with gaseous ammonia in the presence of a dehydration catalyst at

572° F–482° F to prepare the corresponding nitriles.

"*The Ralston et al patent* discloses reacting gaseous ammonia with higher fatty acids or esters at a temperature of above 626° F. in the presence of a catalyst, vaporizing off the water, and thus preparing nitriles.

"*The British patent* discloses reacting the vapor of fatty acids or esters with gaseous ammonia in the presence of a dehydration catalyst at temperatures of 608° F. upward to prepare nitriles. A number of examples disclose operation of exact temperatures or within a narrow range such as 10° C. For instance, Example 7 discloses a 'working temperature' of 380° C.

"*The Dow patent* discloses the use of diphenyl oxide admixed with a hydrocarbon as a heat transfer medium.

"*The Andrews patent* discloses an apparatus for catalytic reactions involving an organic raw material reacted with a gas in the presence of a catalyst and providing for use of a *liquid heat-transfer medium*." (Italics quoted.)

The board rendered two decisions in the case, its second being upon a request for reconsideration. The following is quoted from its first decision:

"In order to maintain the temperature desired in the dehydration zone it is proposed to heat the same with a heat medium having the desired boiling point. Presumably steam at a given high pressure could be used for this purpose but at the high temperatures used the pressure generated would be prohibitive and appellant therefore proposes to use a mixture of diphenyl and diphenyl oxide. The preferred temperatures are between 570° and 700° F. The dehydration of the substance is an endothermic reaction and it is obvious that as the temperature is reduced by the reaction, heat is supplied or released by the vapor of the heating medium undergoing condensation.

"Each of the patents to Nicodemus et al, Ralston and the British patent discloses the process of reacting the vapors of higher fatty acids or the esters thereof with gaseous ammonia in contact with a· dehydrating catalyst and the temperatures being maintained are substantially the same as set forth here but these patents do not disclose the use of a high boiling point liquid for supplying heat to the dehydration zone. The patent to Dow shows that it is old to use a mixture of high boiling point organic compounds such as diphenyl oxide, pyrene, para-hydroxy-diphenyl etc. to obtain a heat transfer medium having a desired boiling point. Since the first three patents mentioned disclose the use of the heat in the dehydration zone we must agree with the examiner that no invention would be involved in utilizing the heat transfer medium shown in the Dow patent for this purpose."

In the decision on the petition for reconsideration, the board said:

"Appellant contends that the Dow patent contemplates the use of the heat transfer medium in the liquid form rather than in the vaporous form as claimed.

"This point is deemed to be immaterial. At the beginning of this patent reference is made to steam and hot water as alternatives in the heat exchange art. For some purpose one is preferable to the other and vice versa. If a high boiling liquid is substituted for water then the same situation would arise. There would be no difficulty in finding a mixture of substances listed in the patent that would be vaporized at the temperatures used."

It is pointed out in appellant's application that, in carrying out the reactions called for by the appealed claims, it is necessary to maintain a subtantially constant temperature within the range of 570° F. to 700° F., and that as the reaction is endothermic it is necessary that heat be supplied to the reaction zone if the required temperature is to be maintained.

Each of the patents to Nicodemus et al. and Ralston et al. and the British patent discloses the idea of carrying out reactions of the kind called for by the appealed claims at temperatures approximating those set forth in the claims. In view of those disclosures, and of the common practice of supplying heat by a heated fluid circulating medium, as shown by the Dow and Andrews patents there would be no invention, broadly, in maintaining the desired temperature in the processes disclosed in the Nic-

odemus et al., Ralston et al., and British patents by means of a circulating fluid medium.

The appealed claims, however, are limited to the use of a vaporous heating medium having a boiling point between 570° F. and 700° F., and the claims state that this medium is condensed as the reaction proceeds and thus supplies heat to the reacting materials. So, appellant is claiming the utilization of the *latent heat of vaporization* as the source of the heat supplied to the reacting materials. Such heat is given up by the vapor, without change of temperature, as the vapor passes into the liquid stage. Accordingly, it is possible to supply a large amount of heat without using a heating medium having a much higher temperature than the materials to be heated.

It is well understood that if a heating medium has a boiling point such that it does not *change from a vapor to a liquid state* while it gives up heat to the reacting materials, there necessarily would be a considerable lowering of the temperature of the heating medium. In order to allow for this temperature reduction, the heating medium would have to be supplied initially at a temperature well above that of the reacting materials. However, under such circumstances, the reacting materials near the point where the heating medium is supplied would be heated above the desired reaction temperature.

The use of a heating medium having a boiling point within the relatively narrow range of temperature which it is desired to retain in the reacting materials, therefore, as explained in appellant's application, has a peculiar advantage in that the heating medium being in the vapor stage gives up its latent heat as it passes through the reacting zone and thus remains at a substantially constant temperature, thereby avoiding the danger of overheating any part of the reacting materials.

The references relied upon by the Patent Office tribunals do not teach the desirability of the relationship, hereinbefore stated, existing between the boiling point of the heating medium and the desired temperature of the materials in the reaction zone.

The fact that the Dow patent shows that heating media having boiling points within the range claimed here is not sufficient to justify the rejection of the appealed claims. The claims are not drawn to a heating medium per se but to a method involving a particular relationship between the boiling point of the heating medium and the desired temperature of the reacting materials. That relationship is not disclosed or suggested by the reference of record, and, as appellant's process as defined by the appealed claims, produces a new and unexpected result, we are of opinion that the claims on appeal define patentable subject matter.

For the reasons stated, the decision of the Board of Appeals is reversed.

Reversed.