**AMERICAN EXPORT LINES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Court No. 78–1–00174.
C.D. 4864.

United States Customs Court.

July 24, 1980.

Haight, Gardner, Poor & Havens, New York City (M. E. DeOrchis, Brian D. Starer and Nicholas H. Cobb, New York City, on the briefs), for plaintiff.

Alice Daniel, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Field Office for

Customs Litigation, Washington, D. C. (Madeline B. Kuflik, New York City, on the briefs), for defendant.

RE, Chief Judge:

In this action, plaintiff sues to recover duties assessed on repairs made overseas to its vessel, the C. V. Lightning. On the ground that plaintiff failed to comply with procedural requirements, the defendant has moved to dismiss the action for lack of jurisdiction.

The repairs, for which plaintiff seeks a remission of duties, arose from an unexpected grounding suffered by the vessel as it was departing New York for Europe. Although the crew was able to release the ship in a matter of seconds, the ship's master nevertheless anchored for damage inspection. After inspection by both the ship's crew and an American Bureau of Shipping engineer, the C. V. Lightning was found to be seaworthy, and departed from New York.

After docking at Bremerhaven, West Germany, the vessel underwent another inspection for damage. As a result of this inspection, an American Bureau of Shipping surveyor in Bremerhaven declared the vessel unseaworthy, and required that repairs be made before he would authorize a return voyage.

After the repairs were made, the vessel returned to New York, and pursuant to section 466(a) of the Tariff Act of 1930, as amended, duties were assessed on the cost of the foreign repairs. This statute provides for a duty of 50 per centum to be assessed on the cost of repairs made in a foreign port on a vessel, documented under the laws of the United States, engaged or intended to engage in foreign or coasting trade. Section 466(b)(1)[1] also provides that if the owner of the vessel furnishes good and sufficient evidence that "such vessel, while in the regular course of her voyage, was compelled, by stress of weather or other casualty, to ... make such repairs, to

secure the safety and seaworthiness of the vessel to enable her to reach her port of destination," the Secretary of the Treasury may remit or refund the duties. See Suwannee Steamship Co. v. United States, 354 F.Supp. 1361, 70 Cust.Ct. 327, C.R.D. 73–3 (1973).

Plaintiff does not dispute the amount of the duties assessed, but contends that the casualty suffered by the C. V. Lightning, in running aground, falls within the remission provision of section 466(b)(1). Plaintiff asserts that no duties should have been assessed on the cost of the repairs, or, in any event, the duties exacted should be remitted or refunded.

Defendant denies that the grounding of the C. V. Lightning constituted a casualty within the regular course of the voyage. Hence, the defendant contends that plaintiff does not qualify for the remission of duties authorized by section 466(b)(1). Moreover, defendant maintains that, since plaintiff failed to comply with essential procedural requirements, it is not entitled to prosecute this action for remission of the foreign repair duties.

Specifically, defendant maintains that plaintiff failed to comply with two procedural requirements: (1) the regulatory mandate under 19 C.F.R. § 4.14 for filing log abstracts within 90 days after filing petition for remission of repair duties; and (2) the statutory requirement under 19 U.S.C. § 1514 for filing a protest within 90 days after the posting of notice of liquidation.

Plaintiff, on the other hand, contends that (1) the Customs Service failed to comply with its own regulations by not sending plaintiff a denial of its remission petition; and (2) the proper time for initiating a protest for the remission of foreign repair duties is 90 days from denial of the remission petition.

Plaintiff argues that, even if the date of liquidation is held to be the date on which

1. This section was redesignated as section 466(d) under a 1978 amendment to the Tariff

Act of 1930. Pub.L. No. 95–410, § 206(2).

the 90–day period began to run, plaintiff's action was nonetheless filed timely through the letters it sent to Customs within 90 days after liquidation. Plaintiff also maintains that defendant should be estopped from raising any jurisdictional defenses arising from procedural defects, as defendant was instrumental in determining the procedures plaintiff should follow.

The procedure for seeking remission of duties on vessel repairs prior to liquidation is set forth in 19 C.F.R. § 4.14 of the Customs Regulations. Section 4.14 requires filing of Customs Form 3415, Declaration of Foreign Repairs to Vessels, upon entry, and filing of an application for remission of duties within 90 days from the date of entry. Evidence of the compelling nature of the repairs, including abstracts of the ship's log, must be filed within 90 days after the filing of the application. The regulation provides for the customs officials to reach a determination on the application, and to notify the applicant of the determination.

Although various claims have been advanced, the crucial questions presented pertain to the necessary procedures to obtain a remission of duties, and whether the parties have complied with these procedures. It cannot be disputed that confusion existed for both parties as to the proper method to obtain administrative review of the decision to impose assessment of foreign repair duties.

There is a long chronological list of filings and responses between the parties in the attempt to gain remission of duties. After the C. V. Lightning returned to New York, plaintiff filed, on June 27, 1974, a vessel repair entry. On July 1, 1974, plaintiff submitted a letter addressed to the U.S. Customs Service at New York requesting that no duties be assessed on the ship's foreign repairs. Certain required documents were submitted with that letter, but no repair cost breakdown or log abstract was submitted at that time. On August 20, 1975, plaintiff forwarded the final repair cost invoices. However, no log abstracts were ever submitted.

Plaintiff claims that it never received a response from Customs to its request for remission of the repair duties. Defendant maintains that plaintiff was sent a denial, but has not produced a file copy.

The entry was liquidated on October 24, 1975. Shortly after receipt of the bill, i. e., a statement of the amount of liquidated duties, on or about November 5, 1975 plaintiff wrote a letter to the Commissioner of Customs, Washington, D. C., requesting cancellation of the duties. On the following day, a copy of this letter was sent to the customs officials in New York. Plaintiff attached a cover letter to the November 5th letter, asking that the New York office forward plaintiff's request to the Washington office.

Plaintiff received further bills from Customs for payment of the vessel repair duties, but received no reply to its November letters. On January 7, 1976, plaintiff again wrote to the customs officials in Washington, D. C., for a response to the November letters. On February 5, 1976, Customs informed plaintiff that the November letters had never been received.

Plaintiff responded by sending another letter to Customs, repeating the information contained in the November 1975 letters, together with a request for the cancellation of the vessel repair duties. Customs denied this request in a letter dated January 14, 1977.

On April 7, 1977, plaintiff's attorneys wrote to Customs, supplying supplemental information on plaintiff's claim, and asked for reasons for the denial. By letter dated July 28, 1977, Customs reaffirmed its prior denial.

Plaintiff filed a formal protest against the Customs decision on September 27, 1977. On October 7, 1977, Customs again denied this protest, and on January 30, 1978, plaintiff filed a summons to commence this civil action. Whether or not this action was commenced within the jurisdictional requisite depends upon the legal effect of the documents filed.

On July 1, 1974, plaintiff filed a remission application but never filed the required log abstracts. Although defendant maintains that the Customs Service notified plaintiff of the denial of the petition, plaintiff contends that it never received the notification, and that Customs liquidated the entry without completing the procedures for the remission petition. Plaintiff submits that, to require it to file a formal protest within 90 days after liquidation, as urged by defendant, would result in plaintiff's initiating a second review procedure while a prior review procedure, i. e., the remission application, was still pending.

According to plaintiff, the proper time for filing a protest is 90 days after the final decision on its application for remission of the duties rather than 90 days after liquidation. Under this interpretation, plaintiff contends that it would not be required to file a formal protest until after notification of the determination on the remission petition.

In support of its position, plaintiff cites 19 U.S.C. § 1514(b)(2)[2] which reads in pertinent part:

"(2) A protest of a decision, order, or finding described in subsection (a) of this section shall be filed with such customs officer within ninety days after but not before—

(A) notice of liquidation or reliquidation, or

(B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made."

Plaintiff submits that protests regarding repair remissions are governed by subparagraph (B). Under the circumstances presented, the court does not agree. Subsection (a) of section 1514 requires decisions of the customs officer to be final and conclusive unless a protest is filed as provided in section 1514. Decisions specifically included are "the legality of all orders and findings entering into the same, as to . . .

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury," and "(5) the liquidation or reliquidation of an entry, or any modification thereof."

■ The provision for repair duty remission petitions under section 4.14 of the Customs Regulations does not create the circumstances in which liquidation is inapplicable, as required by subparagraph (B). The procedures provided for by section 4.14 were all designed to be completed *prior* to liquidation.

Section 4.14(e) of the regulations explicitly states in part:

"Inasmuch as an unprotested liquidation insofar as it relates to the classification of items under section 466(a) of the Tariff Act of 1930, as amended, is final at the expiration of 90 days, a subsequent application in regard to such classification cannot be considered in the absence of a timely protest."

■ Moreover, under section 4.14(h), if the applicant fails to file timely the required evidence, Customs may liquidate the entry *without* notifying the applicant of a determination of its remission petition. Thus, since plaintiff did not file the required log abstracts, two review procedures were not, as plaintiff suggests, pending simultaneously. Rather, by not complying with the regulation in filing the required log abstracts, plaintiff failed to quality for a determination of its remission petition.

Section 4.14(h) of the Customs Regulations expressly provides that:

"(h) The evidence . . . shall be furnished to the district director [of Customs] within 90 days after an application is filed. *If such evidence is not received within the 90-day period, the entry shall be liquidated without regard to the application* unless the district director [of Customs] shall have approved an extension of such period." [Emphasis added.]

---

2. This section was redesignated 19 U.S.C. § 1514(c)(2) as of January 1, 1980, with no change in language.

Thus, since the plaintiff failed to complete its application, and no extension was approved, under the regulation Customs could liquidate the entry "without regard to the application."

■ The finality of duty assessment, i. e., the liquidation, was designed to eliminate confusion, and guarantee a final reckoning of an importer's liability for a specific entry. Thus, under 19 U.S.C. § 1514 all objections to duty assessment must be raised by the filing of a protest within 90 days of liquidation. As previously noted, these include the legality as well as the correctness of a liquidation. *See United States v. A. N. Deringer, Inc.*, 593 F.2d 1015, 66 CCPA ——, C.A.D. 1220 (1979).

Plaintiff maintains that it properly commenced its action through the November letters that it mailed to Customs. Within 90 days after liquidation, plaintiff sent Customs two letters relating to the repair duties. It is plaintiff's contention that these letters constituted a valid timely–filed protest of the liquidation.

■ It is basic to customs law that protests are not to be strictly construed. Quoting an earlier appellate case, the court, in *Norwood Imports v. United States*, 48 Cust.Ct. 1, 3, C.D. 2306 (1961), explained: "The statute requiring a protest on the part of importers was not designed for men learned in the law and trained to the niceties in pleading but for men engaged in commercial pursuits." Numerous cases addressing the issue of what constitutes a sufficient protest have been reviewed at length in *Mattel, Inc. v. United States*, 377 F.Supp. 955, 72 Cust.Ct. 257, C.D. 4547 (1974). In *Mattel*, Judge Maletz described the standards for determining the sufficiency of a protest:

> "While no formal rules have been devised for the manner in which such objections should be expressed, the court has held letters to be sufficient as protests where they conveyed to the customs officials the objection in the mind of the protesting party so that the former would have an opportunity to review their decision and take action accordingly." *Id.* at 260.

> "In short, the court, taking a liberal posture, has held that, however cryptic, inartistic, or poorly drawn a communication may be, it is sufficient as a protest for purposes of section 514 *if it conveys enough information to apprise knowledgeable officials of the importer's intent and the relief sought.*" *Id.* at 262. [Emphasis added.]

*See also B. F. Pantoja v. United States*, 83 Cust.Ct. 170, C.R.D. 79–17 (1979), and *Labay International, Inc. v. United States*, 83 Cust.Ct. 152, C.D. 4834 (1979).

■ Although the November 5, 1975 letter may have omitted some of the "niceties" of a formal protest, it nonetheless conveyed sufficient information to apprise the customs officials that the plaintiff was protesting the liquidation on October 24, 1975 of the vessel repair duties. The letter dated November 5, 1975, and sent to the Commissioner of Customs, made clear the plaintiff's objection in the following language:

> "The purpose of this letter is to ask that *consideration be given towards the cancellation of the above mentioned duties* in view of the fact that the vessel would not be allowed to return to the United States unless repairs were carried out overseas." [Emphasis added.]

The letters in issue have been carefully examined to determine their meaning and effect. From the language used, there is no question that the plaintiff objected to the assessment of the repair duties. Judicial decisions teach that there are no formal rules for the manner in which objections should be expressed in a protest. *United States v. Sheldon & Co.*, 5 Ct.Cust.Appls. 427, 429, T.D. 34946 (1914), a germinal case, states the applicable principle of customs law that:

> ". . . a protest . . . must show fairly that the objection afterwards made at the trial was in the mind of the party at the time the protest was made and was brought to the knowledge of the collector to the end that he might ascertain the precise facts and have an opportunity to correct the mistake and cure the defect if it was one that could be obviated."

Plaintiff received repeated requests from Customs for payment of the repair duties but received no response to its letters. Finally, after much correspondence between the plaintiff and the Customs Service, and a repetition of plaintiff's objection, the plaintiff was notified on January 14, 1977 that its request for cancellation of duties had been denied. The Customs Service, in rendering a full administrative review, included an explanation of that negative decision, and stated that the casualty loss that gave rise to the repairs "took place before the voyage commenced." *See Suwannee Steamship Co. v. United States*, 435 F.Supp. 389, 390, 79 Cust.Ct. 19, 21, C.D. 4708 (1977).

 The November 5, 1975 letter, which was a valid protest timely filed against the liquidation of October 24, 1975, was followed by the Customs Service's decision of January 14, 1977 denying the remission of the repair duties. This denial must be regarded as the notice of denial of that protest within the scope of 28 U.S.C. § 2631(a). The letter of denial, dated January 14, 1977, admittedly received by the plaintiff, commenced the running of the 180-day statutory limit for the filing of a summons. The letter of Customs dated July 28, 1977 merely reaffirmed its prior denial and did not cause the 180-day statutory period to commence again.

As January 30, 1978, the date plaintiff filed its summons, is more than 180 days after the date of the mailing of the Customs Service letter of January 14, 1977, this action must be dismissed because of untimeliness.

Plaintiff also maintains that the defendant should be estopped from asserting a timeliness defense. Plaintiff, however, has not shown that Customs was instrumental in plaintiff's failure to meet either the statutory or regulatory requirement. Plaintiff has presented no evidence that Customs refused tender of either the log abstracts or a sufficient protest.

It is clear that Customs, as well as plaintiff, is bound by the pertinent statute, and may not waive jurisdictional defects.

Moreover, as recently noted by Judge Miller, writing for the Court of Customs and Patent Appeals:

"[E]quitable estoppel, even if available in cases involving the Government in its proprietary capacity, is not available against the Government in cases involving the collection or refund of duties on imports." *Air-Sea Brokers, Inc. v. United States*, 596 F.2d 1008, 1011, 66 CCPA ——, C.A.D. 1222 (1979).

Since the summons to contest the denial of the protest was not timely filed, the defendant's motion to dismiss is granted.

Judgment will be entered accordingly.