131, 98 S.Ct. at 2662–2663. Despite the changed phraseology, plaintiff's alternative argument fails as a matter of law.

By and large, we do not believe that "justice and fairness" require us to find a taking in this case. Reduced to its essentials, this case merely presents an instance of some diminution in value, or frustration of reasonable investment-backed expectations, stemming from changes in applicable statutes and regulations—an insufficient basis, under *Penn Central*, to establish a taking. We note that in a number of recent cases the Supreme Court has refused to find takings under circumstances arguably far more compelling than those presented by the case at bar. *See, e. g., Agins, supra; Penn Central Transp. Co., supra.*[4]

We feel that these considerations are dispositive of plaintiff's claim and hold that there has been no taking.[5]

### CONCLUSION OF LAW

The court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is dismissed.

**FARRELL LINES, INC. as successor to American Export Lines, Inc., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 80–38.**

United States Court of Customs and Patent Appeals.

Aug. 20, 1981.

As Modified on Denial of Rehearing Feb. 4, 1981.

Opinion on Rehearing Filed Feb. 4, 1982.

See 667 F.2d 1017.

---

**4.** Because of our ultimate disposition of this cause, it is unnecessary to consider the impact of the federal navigational servitude upon the issues herein. *See generally Kaiser Aetna v. United States,* 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979).

**5.** All other arguments raised by plaintiff, although not directly addressed by this opinion, have been considered and found to be without merit.

Nicholas H. Cobbs, New York City, for appellant.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Joseph I. Liebman, Atty.-in-Charge, New York City, Barbara M. Epstein, Bellmore, N. Y., of counsel, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

MILLER, Judge.

This appeal is from the judgment of the United States Customs Court (hereinafter referred to as the Court of International Trade) in *American Export Lines, Inc. v.*

1. The statute provides for a duty of 50 per centum to be assessed on the cost of repairs and equipment and parts therefor in a foreign port for a ship, documented under the laws of the United States, engaged or intended to engage in foreign or coasting trade; further, that if the owner or master furnishes good and sufficient evidence that the ship, while in the regular course of her voyage, was compelled by

*United States,* —— Cust.Ct. ——, 496 F.Supp. 1320, C.D. 4864 (1980), dismissing for lack of jurisdiction an action by American Export Lines, Inc. ("AEL"), to recover duties assessed on repairs made overseas to its ship, the C. V. LIGHTNING. We reverse and remand.

As described by the Court of International Trade, the repairs were necessitated by an unexpected grounding of the ship as it was departing New York for Europe. Although the ship was freed in a short time, its master anchored it for inspection. After inspection by both the crew and an American Bureau of Shipping engineer, it was found to be seaworthy, and it continued on its voyage. After docking at Bremerhaven, West Germany, there was another inspection for damage, as a result of which an American Bureau of Shipping surveyor in Bremerhaven found the ship unseaworthy and required that repairs be made before he would authorize a return voyage. After repairs were made in Amsterdam in the amount of $346,850.13, the ship returned to New York. Pursuant to section 466(a) of the Tariff Act of 1930, 19 U.S.C. § 1466,[1] duties in the amount of $153,842.14 were assessed.

AEL contends that the casualty suffered by the C. V. LIGHTNING in running aground falls within the remission or refund provision of section 466. The Government denies that the grounding of the ship constituted a casualty within the regular course of her voyage and contends that AEL does not qualify for the remission or refund of duties authorized by section 466. Primarily at issue here are the Government's argument that AEL failed to file a protest within ninety days after the posting of notice of liquidation and the holding of the Court of International Trade that the filing by AEL of its summons with the court was not timely.

As found by the Court of International Trade, the following is a chronological list of filings and responses between the parties:

June 27, 1974  Vessel repair entry filed by AEL

stress of weather or other casualty to put into such foreign port for repairs in order to be safe and seaworthy to reach her port of destination, the Secretary of the Treasury may remit or refund the duties. Compensation paid to members of the regular crew in connection with installation of equipment and making of repairs is not included in the cost thereof.

July 1, 1974 Application for relief from duties on ship's foreign repairs (no log abstract as required by 19 CFR 4.14(f) but Coast Guard report and master's statement included) [2]

August 20, 1975 Final itemized repair cost invoices filed by AEL

October 24, 1975 Entry liquidated (Bulletin Notice showing liquidation this date in record); bill for $153,842.14 duties sent to AEL

November 5, 1975 AEL letter to Commissioner of Customs, Washington, D.C., requesting cancellation of the duties

November 6, 1975 Copy of November 5 letter sent to Customs officials in New York. Cover letter refers to said letter as "petition for cancellation" and requests that it be forwarded to Customs Service Headquarters in Washington, D.C.

January 7, 1976 AEL letter to Commissioner of Customs asking for response to the November 5 letter requesting "cancellation" of duties

February 5, 1976 Reply from Carrier Rulings Branch of Customs Service Headquarters stating there is no record of receipt of the November 5 letter and requesting that AEL direct its petition "to this office through the involved Customs office"

February 9, 1976 AEL letter to Carrier Rulings Branch stating that its "petition" of November 5, 1975, was, in fact, directed "to your office through the U.S. Customs Service here in New York." Bill for duties attached, and "If, however, there is something additional you require from us please do not hesitate to so advise" [3]

January 14, 1977 Letter from Headquarters, Customs Service, Washington, D.C., to Regional Commissioner of Customs, New York, denying "petition" of AEL "seeking remission of duties" [4]

April 7, 1977 AEL "supplemental petition for relief" and containing supplemental information sent to Headquarters, Customs Service, through the Area Director of Customs, New York

July 28, 1977 Letter from Headquarters, Customs Service, Washington, D.C., to Area Director of Customs, New York, stating "Relief is denied" and giving a more complete analysis than the January 14, 1977, letter

September 27, 1977 Formal protest filed by AEL, referring to decision of July 28, 1977

October 7, 1977 Formal protest denied because "Original Customs decision reviewed and found to be correct"

January 30, 1978 AEL files summons with Customs Court

In addition to the above, affidavits filed by AEL in opposition to the government's motion to dismiss establish, without contravention, that numerous informal meetings between AEL's representatives and Customs officials took place from June of 1974 to January 24, 1977, during the course of which Customs officials (including the Regional Counsel for the Eastern Division) advised that AEL had ninety days in which to appeal the denial of AEL's petition for remission of duties by filing a formal protest; further, that at no time were they advised that AEL's formal protest was not

---

2. AEL states that it never received a response to its application. The Government was unable to produce a copy, and an affidavit from Ross Griffin, Chief of the Carrier Control Branch, Inspection and Control Division, New York Seaport Area, United States Customs Service, merely states his "belief" that such response was given.

3. There is no showing that the Customs Service ever indicated a deficiency of documentation in the July 1, 1974, application, and AEL asserts that the ship's log abstract would have contained no information of value to the Customs Service, "since any entry pertaining to the grounding would merely note the time and place of the occurrence and duplicate the information contained in the Master's statement." Under such circumstances and contrary to the view of the Court of International Trade that failure to file a log abstract within ninety days of entry voided AEL's application for relief, we are persuaded that the requirement for a log abstract was waived. In any event, the case turns on what happened after liquidation.

4. The Court of International Trade states that the denial related to "another letter to Customs, repeating the information contained in the November 1975 letters, together with a request for the cancellation of the vessel repair duties." However, the January 14, 1977, letter refers to the Regional Commissioner's "letter of March 12, 1976, submitting a petition filed by American Export Lines, Inc., under section 4.14(k) of the Customs Regulations." It appears that the "petition" referred to was a letter ("petition for cancellation") from AEL to the Commissioner of Customs, Washington, D.C., dated March 4, 1976, which repeated the substance of AEL's November 5, 1975, letter.

timely[5] or that the time for filing a formal protest had expired or that a formal protest should have been filed within ninety days following liquidation on October 24, 1975.

██ We note that, in reaching a decision on this case, the Court of International Trade said: "It cannot be disputed that confusion existed for both parties as to the proper method to obtain administrative review of the decision to impose assessment of foreign repair duties." In such a situation, particularly where the party seeking relief has relied upon Customs officials for guidance, *dismissals should be granted sparingly. Dann v. Studebaker-Packard Corp.*, 288 F.2d 201, 215–16 (6th Cir. 1961); *Kingwood Oil Co. v. Bell*, 204 F.2d 8, 12–13 (7th Cir. 1953). All uncontroverted factual allegations in the complaint, along with the supporting affidavits of record, should be accepted as true.[6] *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Smith v. Gross*, 604 F.2d 639, 641 n.1 (9th Cir. 1979); *O'Connor v. Yezukevicz*, 589 F.2d 16, 18 (1st Cir. 1978); *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1332 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977); *Garrett v. Bamford*, 538 F.2d 63, 65 (3d Cir.), *cert. denied*, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976).

██ Without citation to any authority, the Court of International Trade held that the decision of the Customs Service denying AEL's petition for remission of duties was not subject to protest under 19 U.S.C. § 1514(c)(2)(B).[7] However, the record shows that there was a notice of liquidation here, so that subparagraph (2)(A) clearly applies and, thus, subparagraph (2)(B) does not apply. Moreover, in 19 U.S.C. § 1466, *supra* note 1, the Congress established an administrative procedure, implemented in detail by Customs Regulation 19 CFR 4.14, whereby the owner or operator of a vessel may apply for relief (remission or refund) from duties in accordance with the authority of the Secretary of the Treasury and may petition the Commissioner of Customs for review of the district director's decision on the application. This court has held that Congress intended thereby to confer upon the Secretary the exclusive and final authority to act on such a petition and that the Court of International Trade is *without jurisdiction* over his action. *Waterman Steamship Corp. v. United States*, 30 CCPA 119, C.A.D. 223 (1942). *See* Sturm, *Customs Law and Administration* § 56.3 (1980).[7.5] As the Court of International Trade pointed out, it appears that this procedure was designed to avoid unnecessary liquidations. However, there appears to be no reason why, in a case where an application has been followed by a liquidation, a petition for review of denial of the application (implied by the liquidation as recognized by the Government in its brief) cannot be considered under 19 CFR 4.14(k) of the regula-

5. There is support for such a statement on the face of the denial of AEL's formal protest, with the box checked for "Original Customs decision reviewed and found to be correct" and the box labelled "Untimely filed" left blank.

6. Although not so labelled by the Court of International Trade, the Government's motion plus affidavits of both parties could well be considered a motion for summary judgment. In such a case, the underlying facts contained in the affidavits must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

7. 19 U.S.C. § 1514(c)(2) provides, in pertinent part:

(2) A protest of a decision, order, or finding described in subsection (a) of this section shall be filed with such customs officer within ninety days after but not before—

(A) notice of liquidation or reliquidation, or

(B) in circumstances where subparagraph (B) is inapplicable, the date of the decision as to which protest is made.

This court, in a unanimous opinion in *United States v. C.J. Tower & Sons of Buffalo, Inc.*, 61 CCPA 90, 94, C.A.D. 1129, 499 F.2d 1277, 1281 (1974), stated:

Section 514 [19 USC 1514] is not a jurisdiction-granting statute. Jurisdiction of the Customs Court ... was derived from ... 28 USC 1582, effective by virtue of the Customs Courts Act of June 2, 1970, P.L. 91–271, 84 Stat. 274 ....

7.5. We are persuaded that *Waterman* is no longer controlling in view of the Administrative Procedure Act (5 USC 701 et seq.) which authorizes judicial review to determine whether agency action, findings, and conclusions are arbitrary, capricious, or otherwise not in accordance with the law (5 USC 706). *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Littell v. Morton*, 445 F.2d 1207 (CA 4 1971); *Wong Wing Hang v. Immigration and Naturalization Service*, 360 F.2d 715 (CA 2 1966); *Suwannee Steamship Co. v. United States*, 70 Cust.Ct. 327, C.R.D. 73–3, 354 F.Supp. 1361 (1973). Also, we are satisfied that authority granted the Secretary of the Treasury under 19 USC 1466 to remit or refund duties is not "discretion by law" for purposes of 5 USC 701(a)(2).

tion.[8] Indeed, that is precisely the procedure followed in this case, and both the filing of the petition and supplemental petition and their consideration appear to have been in the utmost good faith of both AEL and the Customs Service. Now, however, the Government urges, in effect, that, because no protest to the liquidation of October 24, 1975, was filed within ninety days, the petition and supplemental petition for review of the district director's decision and their consideration by the Customs Service amounted to a charade.

■ Rather than thus to elevate form over substance, we hold that the ninety-day period of limitations for filing a protest to the liquidation of October 24, 1975, was tolled[9] from the date of the petition for cancellation of November 5, 1975, until the notice, dated July 28, 1977, of denial of AEL's supplemental petition.[10] Cf. Schering Corp. v. United States, —— CCPA ——, —— C.A.D. 1250, 626 F.2d 162, 166 n.8 (1980) (unavailability of entry papers does not void an otherwise valid liquidation, but tolls the liquidation until entry papers become available for examination). We agree with AEL that tolling should run until final agency action on its supplemental petition, which elicited a more complete analysis than that provided by the Customs Service in its January 14, 1977, denial of the petition.[10.5]

■ Since, under tolling, only seventy-three days of the ninety-day period of limi-

tations for filing a protest had expired when AEL filed its formal protest on September 27, 1977, the protest was timely. Denial of the formal protest was under date of October 7, 1977, and filing of the summons with the Court of International Trade on January 30, 1978, was well within the 180-day period for doing so, as provided by 28 U.S.C. § 2631(a) (1976).

We note that the Court of International Trade agreed with one of AEL's arguments, namely: that the November 5, 1975, letter amounted to a timely-filed "protest." In doing so, it recognized, properly, that it is "basic to customs law that protests are not to be strictly construed." However, that was only a Pyrrhic victory for AEL, because the Court of International Trade then held that the letter of January 14, 1977, from Headquarters, Customs Service, Washington, D.C., constituted a denial of the "protest" and began the running of the 180-day period for filing a summons with the court; that the letter of July 28, 1977, merely reaffirmed the letter of January 14, 1977, and "did not cause the 180-day statutory period to commence again";[11] and, finally, that the summons filed January 30, 1978, was, therefore, untimely. Our principal difficulty with this approach is that both parties consistently and in good faith treated the letters from AEL as a valid petition for remission ("cancellation") in all of their dealings, and the formal protest of September 27, 1977, was treated as a timely protest by both parties.[12]

8. Subparagraph (k) provides, in pertinent part:
The owner or operator of the vessel involved . . . may file with the district director a petition addressed to the Commissioner of Customs for a review of the district director's decision on an application claiming relief under section 3115, Revised Statutes, as amended [19 USC 1466(d)] .... Such petition shall be filed within 30 days from the date of the notice of the district director's decision .... When such a petition has been filed, the district director shall immediately transmit both copies thereof and the entire file to Headquarters, U.S. Customs Service, together with any comments he may desire to submit. When the Headquarters, U.S. Customs Service decision has been received the entry shall be liquidated in accordance therewith.

9. "The running of the statute of limitations may be suspended by causes not mentioned in the statute itself." Braun v. Sauerwine, 77 U.S. (10 Wall.) 218, 223, 19 L.Ed. 895 (1869); Collins v. Woodworth, 109 F.2d 628, 629 (6th Cir. 1940).

10.

| Action | Lapsed time of 90-day period for filing protest |
|---|---|
| Liquidation 10/24/75 | |
| Petition for cancellation 11/5/75 | 12 days |
| Denial of supp'l petition 7/28/77 | |
| Formal protest filed 9/27/77 | 61 days |
| Total lapsed time of 90-day period | 73 days |

10.5. It should be pointed out that on January 24, 1977, only five days after notice of the letter from Customs dated January 14, 1977, denying AEL's petition, AEL was advised by Customs to submit supplemental documentation and that it would be considered.

11. 19 U.S.C. § 1514(b)(1) (1976) provides: "only one protest may be filed for each entry of merchandise." There is no similar provision with respect to petitions for review of the denial of an application for remission or refund of duties.

12. AEL has argued, inter alia, for relief under the theory of equitable estoppel. However,

In view of the foregoing, the judgment of the Court of International Trade must be reversed and the case remanded for further proceedings consistent with this opinion.[13]

*REVERSED and REMANDED.*

**In re Fulvio A. PAGLIARO, James G. Franklin, and Rupert J. Gasser.**

**Appeal No. 81–517.**

United States Court of Customs and Patent Appeals.

Aug. 20, 1981.

William H. Vogt, III, Morris N. Reinisch, Marcus J. Millet, New York City, for appellants.

Joseph F. Nakamura, Sol., and Gerald H. Bjorge, Associate Sol., Washington, D. C., for Patent and Trademark Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

"[E]quitable estoppel, even if available in cases involving the Government in its proprietary capacity, is not available against the Government in cases involving the collection or refund of duties on imports." *Air-Sea Brokers, Inc. v. United States*, 66 CCPA ——, ——, C.A.D. 1222, 596 F.2d 1008, 1011 (1979).

Tolling in this case, on the other hand, is in harmony with the Congressional purpose to allow remission of duties on equipment and repairs of American vessels under 19 USC 1466(d) and rests on Congressional recognition that exhaustion of administrative remedies is a "basic principle of administrative law and one that has been followed in customs cases." H.R. Rep. No. 91–267, 91st Cong., 2d Sess. 2, *reprinted* in [1970] U.S. Code Cong. & Ad. News 3202–03. The "mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose." *Leake v. Cincinnati*, 605 F.2d 255, 259 (CA 6 1979), citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 559, 94 S.Ct. 756, 769, 38 L.Ed.2d 713 (1974); *Guy B. Barham Co. v. United States*, 35 CCPA 138, C.A.D. 385 (1948).

13. Contrary to the dissenting opinion, the court has not overlooked or misapprehended points of law or fact. The "concept" of tolling, although not labelled as such, was clearly argued below by appellant (*See* Transcript of Record at 80a, 189a, 191a–192a, 205a, 239a). Moreover, any failure to do so would not be an issue on this appeal, having only been raised by the dissenting opinion and not by the Government. Contrary to the Government's petition for rehearing, tolling was clearly argued by AEL in its brief on appeal to this court, with no objection by the Government.