(C. D. 1921)

PARMENTIER'S ROSES *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided October 15, 1957)

Plaintiff not represented by counsel.

*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: The merchandise involved in this case consists of nursery stock imported from England on or about April 19, 1955. Except for a portion destroyed under customs supervision, duty was assessed on the entire shipment at 12½ per centum ad valorem under paragraph 754 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. Estimated duty in the sum of $48.45 had been paid, and an additional amount of $30.68 was assessed and collected. Plaintiff claimed that it had suffered a 50 per centum loss on the shipment and, therefore, protested the additional duty imposed.

At the trial, John Parmentier appeared on his own behalf and testified as follows:

I am claiming $59.28.

It concerns a shipment of nursery stock which arrived on the "Queen Elizabeth" on April—on May 2, 1955.

I took the shipment to a plant house in Hoboken, N. J. on May 3, '55. We notified by phone the Lloyd's agent in New York, and asked for an inspection.

This report from Lloyd's agents was received by us on September 16, 1955.

We could not notify the Government before we had received Lloyd's report because the damage was not clearly visible at the time when the shipment arrived at my place in Bayport, L. I.

Lloyd's agent made two inspections also on account that it was not directly feasible what the damage would amount to. They made an inspection on May 6, '55, and on July 5, 1955. Then the report was sent by us immediately to the Government; and we asked for a duty refund of $19.72 and $39.56 on the 50 per cent loss of the merchandise. The $19.72 the Government did not allow on the trade discount which the company in England had plainly marked on their bill, while they had charged us retail prices and they had allowed a 25 percent trade discount. But the Government collected duties on the retail amount.

Counsel for the Government moved in evidence the official papers and stated that the Government claimed that, without following section 506 or section 313 (c) of the tariff act, the plaintiff was not entitled to a refund.

Among the official papers, attached to plaintiff's protest, is a copy of a report of Lloyd's Agency. It is stated therein that the merchandise entered Plant Quarantine on April 25, 1955, and was re-

leased on May 2, 1955. Under a heading "Description of Damage," it is further stated:

> At the time of our examination the cases had been opened, plants unpacked and sprayed with water.
>
> The consignee informed us that all internal battens were loose when the cases were opened.
>
> Inspection of the plants revealed most of them to have leaves curled, wilted, withered, and falling. The smaller plants being in a much poorer condition than the larger ones.
>
> As the Consignee was not prepared to agree to an estimate as to the percentage of damage at this time we recommended that the plants be bedded out and agreed to return and inspect them after about two months at which time it should be possible to determine more accurately which plants would survive satisfactorily. * * *
>
> We returned to the nursery on July 5, 1955, and inspected the plants where they were planted in shaded beds. Many plants were dead, many had slight growth on only one or two branches so that they could not be expected to form suitable shapes for commercial purposes even with judicious pruning, others had fresh growth although they had obviously been retarded, and a small percentage were good healthy plants.

Another portion of the report contains the following:

> 50% depreciation applying to the shipment as agreed with the Consignee.

The original pleading herein protests the assessment of an additional $30.68 in duty by the collector. However, at the trial, plaintiff asked for a refund of $19.72, and of $39.56 on the 50 per centum loss of the merchandise. Although no formal motion was made, plaintiff's statement is regarded as an amendment of the protest.

Plaintiff's first claim is one concerning value, namely, that a trade discount should have been deducted from the dutiable value of the merchandise. The official papers show that the amount of the discount was included in the entered value, the merchandise was appraised as entered, and no appeal for reappraisement was filed. Since it has not been alleged that the appraisement was illegal and void, the claim as to value must be dismissed for lack of jurisdiction on the part of the court sitting in classification. *Heemsoth Kerner Corporation* v. *United States*, 31 Cust. Ct. 113, C. D. 1554, and cases cited.

Plaintiff's second claim is to the effect that an allowance should be made in the amount of duty assessed, for the reason that 50 per centum of the merchandise was lost. Counsel for the Government assumes, in his brief, that this claim is under section 506 (1) of the Tariff Act of 1930 and points out that the regulations issued thereunder have not been complied with. He also states:

> It would seem therefore that the case should be decided against the importer, but for one facet of the case. *The Government concedes that it was impossible for the importer herein to make his determination of damage within the time given in section 506 (1), so that he could not possibly inform the officials of his intention to*

*abandon within the statutory time.* Should this act as a bar to the strict enforcement of section 15.3 (a) of the Customs Regulations of 1943?

The case is apparently one of novel impression, for no cases so construing section 506 (1) or section 15.3 (a) have been found. Perhaps all that can be said is that *plaintiff herein has a definitely equitable claim*, but it must be remembered that, as has been so often said, the Customs Court is not a court of equity. [Italics supplied.]

Section 506 of the Tariff Act of 1930, ALLOWANCE FOR ABANDONMENT AND DAMAGE, provides:

Allowance shall be made in the estimation and liquidation of duties under regulations prescribed by the Secretary of the Treasury in the following cases:

(1) ABANDONMENT WITHIN THIRTY DAYS.—Where the importer abandons to the United States, within thirty days after entry in the case of merchandise not sent to the appraiser's stores for examination, * * * any imported merchandise representing 5 per centum or more of the total value of all the merchandise of the same class or kind entered in the invoice in which the item appears, and delivers, within the applicable thirty-day period, the portion so abandoned to such place as the collector directs unless the collector is satisfied that the merchandise is so far destroyed as to be nondeliverable; * * *.

It is evident that this section is not applicable to the facts in the instant case, since the plaintiff did not abandon the merchandise to the United States within 30 days after entry. However, the failure to invoke this remedy is not a bar to a claim that the merchandise was so far destroyed as to constitute a nonimportation. *B. M. Reeves Co., Inc.* v. *United States*, 1 Cust. Ct. 7, C. D. 3. While neither the protest nor plaintiff's statement at the trial was very specific, they indicate a claim that 50 per centum of the merchandise was a total loss and, therefore, not subject to duty.

It is well settled that merchandise which does not arrive in this country or which before arrival within the limits of a port of entry has become utterly worthless by reason of casualty, decay, or other causes, is not regarded as goods, wares, and merchandise and is not subject to duty. *Marriott* v. *Brune*, 9 How. 619; *Lawder* v. *Stone*, 187 U. S. 281; *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074. The burden is upon plaintiff to establish that the goods at the time of importation were wholly worthless, not merely damaged. *Wm. J. Jones and Co.* v. *United States*, 38 C. C. P. A. (Customs) 158, C. A. D. 453.

In the *Shallus* case, it was pointed out that the determination of the amount of merchandise so far destroyed as to be deemed a nonimportation depends upon the establishment of a fact, the condition of the goods at the time they crossed the customs line, which is impossible of precise and accurate establishment. Therefore, this fact may be ascertained by examination and inspection of the goods at the subsequent time of weighing, gauging, appraising, etc. The court added (p. 335):

Remoteness, therefore, ordinarily would seem to go to the weight rather than the materiality of the testimony. The condition of the merchandise, such as fruit, and amount thereof which has withstood the ravages of decay, must of necessity depend upon many and variable conditions and circumstances. Its relative condition at the time of importation measured from any given time thereafter naturally differs in different kinds and classes or grades of the same kind of fruit, its condition when picked, length of voyage, season, and temperature during voyage, its manner of packing and storage, promptness in entry, unloading, examination, and numerous other conditions. These conditions and the witnesses before them all become factors upon and from which the trial court must base its conclusions.

In the instant case, it has been conceded by the Government that it was impossible for the importer to determine the condition of the merchandise at the time of entry or within 30 days thereafter. It is obvious that this type of merchandise, nursery stock, has commercial value only if it is capable of normal growth and development and that an examination at the time of entry might not disclose this fact.

According to the Lloyd's Agency report, an inspection 2 months after planting showed that many of the plants were dead and others had such slight growth that they could not be expected to form suitable shapes for commercial purposes. It follows that what gave them their value and usefulness and made them what they were had been completely lost. Therefore, they are deemed destroyed, rather than damaged, articles. *United States* v. *Pastene & Co.*, 3 Ct. Cust. Appls. 164, T. D. 32458.

On the record presented, and in view of the concessions made by the Government, we hold that 50 per centum of this merchandise (other than that destroyed under customs supervision) was so far destroyed as to have been of no commercial value at the time of importation and did not constitute goods subject to duty under the tariff laws. To that extent, the protest is sustained, and judgment will be rendered directing the collector to reliquidate the entry and make refund accordingly.