(C.D. 3630)

ESFORMES PACKING CORP. ⎱
JNO. G. MCGIFFIN              ⎰ *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 2, 1968)

*Kurz, Toole, Martin, Booth & Taylor* (*Clark W. Toole, Jr.*, of counsel)' for the plaintiff.
*Edwin L. Weisl, Jr.*, Assistant Attorney General. (*Steven Sosnov*, trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise of this protest consists of vegetables and fruits (cucumbers, eggplant, cantaloupe, watermelons) which were exported from the Dominican Republic and entered at Jacksonville, Florida, on December 31, 1964. No claim is made respecting classification of the merchandise. Plaintiff seeks an allowance in duties assessed against the merchandise on the ground that some of the merchandise had spoiled, was "unsalable" and was destroyed under customs supervision.

At the trial counsel for the plaintiff elected to submit the protest upon the record, and did not call any witnesses, and has not filed a brief or memorandum in support of the protest.

It appears from the official papers that the merchandise was released from customs custody on the date of importation, and that no nota-

tions respecting the condition of the merchandise was made on the entry papers by the releasing officer. However, a stamped notation appearing on the face of the entry indicates that the merchandise was inspected and released on December 31, 1964 by the Plant Quarantine Division of the U.S. Dept. of Agriculture.

It also appears from the official papers that Customs Form 4373, dated January 5, 1965, was filed by the importer as to cucumbers, requesting permission to segregate damaged goods at the importer's place of business from the remainder of the shipment and under customs supervision, and requesting that an allowance in duties be made for such portion pursuant to section 15.10 of the Customs Regulations of 1943. And attached to said Form 4373 is Customs Form 4377, issued under date of January 5, 1965, by the deputy collector at the port of Jacksonville and authorizing segregation of the merchandise covered in the attached application under customs supervision on the pier only. At the bottom of said Form 4377 is the return of the inspector, dated January 8, 1965, stating that segregation was conducted under continuous supervision and that the segregated portion, consisting of 321 containers of cucumbers of 16,050 net pounds, was disposed of by dumping at the City of Pompano Beach dump on January 8, 1965.

Also among the official papers are photostatic copies of dumping certificates issued by a Dept. of Agriculture inspector under dates of January 12, 1965, and January 22, 1965, certifying to the inspection of merchandise consigned by Jack Esformes of the Dominican Republic, consisting of 86 crates of long gray type watermelons and 102 crates of cantaloupes, upon application of Kaler Produce Company of Miami, Florida, at the applicant's warehouse and refrigerator No. 9, and further, stating that said merchandise was found to be in such condition as to possess no commercial value at the time of inspection. In the case of the watermelons the certificate dated January 12 says "in all samples all melons show decay, Bacterial Soft Rot, generally advanced stages of development." And in the case of the cantaloupes the certificate dated January 22 says "in all samples practically all melons being soft and shriveled and/or decayed. Decay is Bacterial Soft Rot, all stages."

In its protest plaintiff calls attention to and relies upon 19 U.S.C.A., section 1506(2) (section 506(2), Tariff Act of 1930), 19 CFR section 15.10(b)(1) (section 15.10(b)(1), Customs Regulations of 1943, as amended), and the case of *Parmentier's Roses* v. *United States*, 39 Cust. Ct. 170, C.D. 1921. Section 1506(2) reads:

Allowance shall be made in the estimation and liquidation of duties under regulations prescribed by the Secretary of the Treasury in the following cases:

\*    \*    \*    \*    \*    \*    \*

(2)   Where fruit or other perishable merchandise has been condemned at the port of entry, within ten days after landing, by the health officers or other legally constituted authorities, and the consignee, within five days after such condemnation, files with the collector written notice thereof, an invoiced description and the location thereof, and the name of the vessel or vehicle in which imported.

Section 15.10 (b) (1) reads:
  Articles damaged and worthless at the time of importation.

  \*         \*         \*         \*         \*         \*         \*

(b)   A similar allowance may be made in the case of perishable merchandise in accordance with the following procedure and subject to the conditions set forth therein:

(1)   An application for such allowance shall be filed with the collector on customs Form 4373, in duplicate, within 96 hours after the unlading of the merchandise and before any of the shipment involved has been removed from the pier pursuant to the entry permit.

And in *Parmentier's Roses* v. *United States, supra,* the imported merchandise consisted of nursery stock which had been released from customs custody and from Plant Quarantine with a notation of some damage to the plants, the extent of which was not then determinable. Upon the basis of *evidence* presented by the plaintiff and *concessions* made by the defendant subsequent to the planting of the nursery stock, the Customs Court held that 50 percent of the stock had been destroyed as of the time of importation, and accordingly, sustained plaintiff's protest claim for an allowance in the duties assessed against said merchandise.

The facts of this case do not sustain plaintiff's claim for relief under the statute, regulation, or court decision hereinbefore noted. Insofar as section 1506 (2) is concerned, there has been no condemnation of the imported merchandise or any part thereof at the port of entry. As for section 15.10 (b) (1), plaintiff's application for duty allowance was not filed while the merchandise reposed at the pier—the limitation fixed by the regulation and adhered to by the collector's office in the issuance of the authorization on Customs Form 4377. And unlike the situation in C.D. 1921 plaintiff declined to present any evidence of damage to or deterioration of the imported merchandise as of the time of importation, and no concessions on that score have been made by the defendant. Also there is nothing in the record herein from which the court could properly deduce the existence of such damage or deterioration. It follows, therefore, that the protest herein must be overruled.

Judgment will be entered accordingly.