**ALYESKA PIPELINE SERVICE CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 81–09–01252.

United States Court of International Trade.

Aug. 1, 1986.

George R. Tuttle, P.C. (Stephen S. Spraitzar, San Francisco, Cal., of counsel) for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office (Florence M. Peterson, New York City, attorney) for defendant.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge:

This case arises from the importation during 1975 to 1977 of metal articles manufactured in Japan and used in the construction of the Trans-Alaska Pipeline System. These articles were part of a structure known as an anchor support module, which was specially designed to support a pipeline off the ground while allowing a degree of flexibility sufficient to prevent the stresses of seismic activity and thermal movement from causing damage to the pipeline.

The specific items imported were "framing", "saddle clamps", "sliding plates" and the nuts, bolts, and washers used to connect the framing to the clamps and to brackets which are not part of the items imported here.

The framing resembles a huge, square mattress frame, considerably reinforced across its center and on its diagonals in order to support (in its center) the sliding plate, the saddle clamp and the pipeline. The sliding plate looks like a truncated, hollow column set on a flat rectangular plate sitting in the middle of the framing. It has a big hemisphere resting dome-side-down, partly inside its hollow top. The hemisphere can be welded at different angles inside the hollow top of the sliding plate to accommodate the angle at which the pipeline is passing through above it. The u-shaped bottom part of the saddle clamp goes on top of the hemisphere, the pipe rests on that and the top of the saddle clamp closes over the pipe, securing it to the support structure below.

To make a complete anchor support module, four piles are sunk into the ground, heat pipes and radiator assemblies are installed and brackets are attached to the piles. The imported framing is then bolted to the brackets on the piles, followed by the installation of the sliding plate, the welding of the hemisphere and the lower saddle clamp, the placement of the pipeline and the fastening of the upper saddle clamp. With a little imagination the completed unit resembles a giant four-poster bed with a column in its center supporting and clamping the pipeline.

The articles in question were imported in twenty-one separate entries. The classification of the articles in twenty of those entries was not protested until more than ninety days after the date of their liquidation, a fact which would normally make the protests untimely and would ordinarily preclude the bringing of an action in court under 28 U.S.C. § 1581(a) and 19 U.S.C. § 1514(c)(2)(A). However, in this case the plaintiff proved that the entry papers were not available to its counsel for inspection at the Customshouse in Anchorage, Alaska in November, 1977 or January and February of 1980. The testimony of Mr. Leonard Fertman, Esq., as well as the testimony of Mr. Charles Edelin, a customshouse broker, persuaded the court

that the entries had been misplaced, probably due to understaffing and difficult conditions in the Customshouse, and were not made available, despite repeated requests, until March 26 and 27, 1980. In these circumstances the liquidation of the entries was "tolled" and plaintiff did not lose its opportunity to make protests against administrative action on those entries. *Schering Corp. v. United States*, 67 CCPA. 83, C.A.D. 1250, 626 F.2d 162 (1980). The subsequent inclusion of those entries on a document entitled "amended protest" was sufficient to inform the Customs Service of plaintiff's objection to classification. *United States v. Fred Gretsch Mfg. Co., Inc.*, 26 CCPA 267 C.A.D. 26 (1938); *American Export Lines v. United States*, 85 Cust.Ct. 20, C.D. 4864 (1980), aff'd 69 CCPA 1, C.A.D. 1268, 657 F.2d 1214 (1981).

The administrative treatment of the twenty-one entries raises an issue of classification and an issue with respect to the assessment of duties on the one entry which was unarguably protested in a timely manner.

On the classification issue, the government defends its classification of the imported articles under Item 657.20 of the Tariff Schedules of the United States ("TSUS") as articles of iron or steel, not coated or plated with precious metal, dutiable at the rate of 9.5% ad valorem, pursuant to T.D. 68-9.

Alternatively, the government claims that the importations are properly classifiable as other parts of structures of base metal under Item 652.98 of the TSUS dutiable at the rate of 9.5% ad valorem.

■ The plaintiff claims that the framing, sliding plate and saddle clamp are properly classifiable under Item 652.94, as modified by T.D. 68-9, as "columns, pillars, posts, beams, girders, and similar structural units, not in part of alloyed iron or steel, dutiable at the rate of 3.5% ad valorem. Plaintiff claims that the nuts and bolts are classifiable under Item 646.54 as "bolts and their nuts imported in the same shipment" dutiable at 2 cents per pound and further,

that the washers are free of duty under Item 646.70.

Alternatively, the plaintiff claims that all of the importations, including the nuts, bolts and washers are classifiable under Item 652.94.

A separate issue is raised by the fact, that on a single entry (No. 76–102427 of September 20, 1979) the Customs Service advanced the value by the amount of $2,589,294 to cover value advances relating to all these twenty-one entries (and two other entries, not before the Court) and then demanded duty in the amount of $245,982.93.

The plaintiff protests the advance as done in violation of law and regulation and seeks a refund of all but the pro-rata portion of the duty actually attributable to entry No. 76–102427.

The government contends that the court has no jurisdiction over the claim because the protest was insufficient to raise it, that plaintiff is equitably barred from prevailing on the claim, and that, if there was an error, it was harmless and the Court should order the value advance to be pro-rated over all the appropriate entries.

The exact language of the competing classification provisions is as follows:

Original Classification By Customs

Articles of iron or steel, not coated or plated with precious metal:

\*    \*    \*    \*

Other articles:

\*    \*    \*    \*

Other:

\*    \*    \*    \*

| 657.20 | Other | 9.5% ad valorem |

Alternative Government Claim

Hangars and other buildings, bridges, bridge sections, lockgates, towers, latticemasts, roofs, roofing frameworks, door and window frames, shutters, balustrades, columns, pillars, and posts and other structures and parts of structures, all the foregoing of base metal:

\*    \*    \*    \*

| 652.98 | Other | 9.5% ad valorem |

Plaintiff's Claimed Classification

Hangars and other buildings, bridges, bridge sections, lock-

Plaintiff's Claimed Classification

gates, towers, latticemasts, roofs, roofing frameworks, door and window frames, shutters, balustrades, columns, pillars, and posts and other structures and parts of structures, all the foregoing of base metal:

    Of iron or steel:

      \*    \*    \*    \*

    Columns, pillars, posts, beams, girders and similar structural units:

      Not in part of alloy iron or steel:

        \*    \*    \*    \*

652.94    Other................ 3.5% ad valorem

Bolts, nuts, studs and studding, screws, and washers (including bolts and their nuts imported in the same shipment, and assembled bolts or screws and washers, with or without nuts); screw eyes, screw hooks and screw rings; turnbuckles; all the foregoing not described in the foregoing provisions of this subpart, of base metal:

      Of iron or steel:

646.54    Bolts and bolts and their nuts imported in the same shipment .......................... 0.2¢ per pound

      \*    \*    \*    \*

646.70    Washers:

      \*    \*    \*    \*

      Other.............. free

The outcome of the classification dispute depends on whether one takes a limited view of what is a column or girder or a similar structural unit. The expert testimony in this case, the lexicographic authorities reviewed, and simple direct examination of the exhibits, lead the court to conclude that the imported articles are merely elaborate or creative forms of columns or girders, well within the range of acceptable variation of the named articles. They are most accurately described as girders, columns or similar structural units.

This holds true even if the Court looks at the entire assembled unit of framing, sliding plate and saddle clamp as a single object. In that form the Court sees nothing more than a metal structure with a main horizontal supporting member and a single columnar element rising from its center. If we examine it as a single object or if we reduce it to its components, the similarity to girders and columns is equally impressive.

The framing has all the attributes of a girder as defined in *Webster's Third New International Dictionary Unabridged* (1966):

> **Girder** n. 1 a: a horizontal main member supporting vertical concentrated loads as from beams) b: **Beam**; esp: an iron or steel beam either made in a single piece of built up typically of plates, flitches, latticework, or bars and often of very large proportions—compare ... box girder ...

The framing, impressive as it is, is but a simple object compared to the box girder which was the subject of *J. Ray McDermott & Co., Inc. v. United States,* 69 Cust.Ct. 197, C.D. 4344 (1972), and there held to be a girder under Item 652.921. The box girder was the portion of an off-shore drilling platform that was welded on top of the legs of the platform and supported the entire deck sections, living quarters and drilling rig. In short, the box girder was an enormous variation of a girder, just as the framing here is another lesser sort of variation.

The sliding plate with its hemispherical top and the saddle clamp on top is clearly acting as a column in supporting a compression load, that is to say, a load which compresses the column. It also has the appearance of a column, no stranger in its way than those of antiquity.

The government argues that these importations are more than girders or columns but this argument is not persuasive. The combination into which they are fashioned after importations is nothing more than a combined girder and column which, in its basic function does just what such articles or similar structures would normally do.

These importations have not reached the point at which they become more than girders and columns. This contrasts with the articles in dispute in the recent opinion of *Nissho-Iwai American Corp. v. United States,* —— CIT ——, 641 F.Supp. 808 (1986). That decision dealt with the classification of unassembled bridges or bridge sections con-

sisting of columns, beams, girders, nuts, bolts and, in notable addition, brackets, plates hinges, drain boxes, railing, bridge shoes and railing anchors. The court upheld the classification of these importations under Item 652.98 as bridge sections, and other structures and parts of structures of base metal. Here the imported objects did not under go a transformation into something beyond a structure similar to girders or columns even, in this Court's opinion, when they were ultimately fastened to piles. The heating units and radiators however, give a new dimension to the structure, taking it past being a mere variant or combination of traditional weight or stress bearing elements. The piles and heating units have no bearing on this classification and are mentioned merely to show how much more would have to be involved in these importations to make them comparable to the situation in the *Nissho-Iwai* case.

The capacity for movement of the sliding plate is an additional feature of the support module but it is not so unusual that it overtakes and transforms the basic support functions which make these articles girders, columns or similar structural units.

Based on a stipulation entered into by the parties and expert testimony on those entries which were not the subject of stipulation, the court concludes that the imported articles were not alloyed.

In the opinion of the court the proper classification of the imported articles is to treat the framing, sliding plate and saddle clamp as columns and girders or similar structural units. The nuts and bolts should be classified under Item 646.54, with their weight determined by the best available information. The washers are free of duty.

The court now turns to the question of the assessment of duties on Entry No. 76–102427.

The court finds that the first protest filed by plaintiff adequately expressed its objections to the value advance when it stated as follows:

The above claims are made against the original entry as well as the value advance of $2,589,294 made against this entry but representing a value advance pertaining to approximately 24 additional entries of identical merchandise covered by P.O. 10771–SF60–M–3–SAC.

The value advance was properly challenged in this action as a dispute as to the appraised value or a dispute as to the classification and rate and amount of duties chargeable, under 19 U.S.C. § 1514(a)(1) and (2). *C.L. Hutchins & Co., Inc., Imperial Rug Mills, Inc., v. United States,* 67 Cust.Ct. 60, C.D. 4252 (1971); *United States v. Macksond Importing Co., et al.,* 25 CCPA 44, T.D. 49041 (1937).

■ The law does not permit the Customs Service to assign to one entry the values of merchandise in other entries or the duties owing on them. 19 U.S.C. § 1500 provides for separate, unitary appraisement of entries as follows:

**§ 1500. Appraisement, classification, and liquidation procedures**

The appropriate customs officer shall, under rules and regulations prescribed by the Secretary—

(a) appraise merchandise by ascertaining or estimating the value thereof, under section 402 [19 U.S.C. § 1401a], by all reasonable ways and means in his power, any statement of cost of production in any invoice, affidavit, declaration, other document to the contrary notwithstanding;

(b) ascertain the classification and rate of duty applicable to such merchandise;

(c) fix the amount of duty to be paid on such merchandise and determine any increased or additional duties due or any excess of duties deposited;

(d) liquidate the entry of such merchandise; and

(e) give notice of such liquidation to the importer, his consignee, or agent in such form and manner as the Secretary shall prescribe in such regulations.

■ The necessity of separate appraisement was recognized in Customs Service

Decision 83–39 in which it was stated that a value adjustment to imported merchandise may be reflected only on the entry or entries which cover the imported merchandise.

It follows that the only proper value increase for the entry in question would be one reflecting the value of the merchandise covered by that entry and no other merchandise.

There is no evidence of the claim made by the government in its brief that plaintiff was notified of this irregular procedure, consented to it, or waived its right to raise this issue. The allegedly harmless nature of this error is not apparent to the court.

Accordingly, it is the opinion of the court that the advance of value was improper, the liquidation was invalid and the Customs Service must refund the excess duties charged, i.e., the duties above those attributible to the merchandise covered by that entry.

In sum, the court upholds plaintiff's protests against the classification of these articles and against the advance of value made on Entry No. 76–102427. The importations shall be reliquidated in accordance with the decisions on classification and value expressed in this opinion.