Slip Op. 99 - 3

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: RICHARD W. GOLDBERG, JUDGE**

|  |  |
|---|---|
| SAMSUNG ELECTRONICS AMERICA, INC., Plaintiff, v. UNITED STATES, Defendant. | Court No. 91-04-00288 |

[Plaintiff's motion for partial summary judgment is denied. Defendant's cross-motion for summary judgment is granted. Judgment entered for defendant.]

Dated: January 6, 1999

Irving A. Mandel; Thomas J. Kovarcik and Jeffrey H. Pfeffer, of counsel, for plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice; Bruce N. Stratvert, Commercial Litigation Branch, Civil Division, United States Department of Justice; Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service (Mark G. Nackman), of counsel, for defendant.

## OPINION

**GOLDBERG, Judge:** This case comes before the Court on cross-motions for summary judgment following a decision by the United States Court of Appeals for the Federal Circuit, reversing and remanding this Court's opinion in Samsung Electronics America, Inc. v. United States, 19 CIT 1307, 904 F.Supp. 1403 (1996) ("Samsung I"). See Samsung Elecs. Am., Inc. v. United States, __ Fed. Cir. (T) __, 106 F.3d 376 (1997) ("Samsung II"). Plaintiff Samsung Electronics America Inc. ("Samsung") challenges defendant the United States Customs Service's ("Customs") refusal to grant an allowance in the appraised value of imported electronic equipment under 19 C.F.R. § 158.12. Specifically, Samsung asserts that because the merchandise contained latent defects at the time of importation, Customs should have granted Samsung an allowance in value and refund of duties pursuant to section 158.12. Samsung claims an allowance in value of $1,938,451, the alleged difference between the appraised value at the time of importation and Samsung's own post-importation appraisal of the defective merchandise.

Because the Court concludes that Samsung cannot establish either the existence of latent defects in the subject entries with any specificity or the value of such claimed defects, it grants summary judgment in favor of defendant. The Court exercises jurisdiction in this matter under 28 U.S.C.

§ 1581(a) (1994).

## I.
## BACKGROUND

Plaintiff, among other business ventures, imports substantial quantities of electronic goods manufactured by its foreign parent company, Samsung Electronics Company, Ltd. ("SEC").  This case involves merchandise Samsung entered between 1987 and 1990.  The merchandise at issue is an array of electronic equipment, including televisions, stereos, video cassette recorders, and microwave ovens.  According to Samsung, the subject merchandise "comprise[s] virtually all of the merchandise that [Samsung] imported for the period December 1987 to October 1990."  Pl.'s Statement of Undisputed Facts Pursuant to USCIT R. 56.1, dated April 14, 1993 ("Pl.'s Undisputed Facts I"), at ¶ 2.  Upon entry, Customs appraised the subject merchandise based on transaction value pursuant to 19 U.S.C. § 1401a (1988).  See Samsung I, 19 CIT at 1308, 904 F. Supp. at 1404.  After importation, Samsung sold the merchandise to customers throughout the United States.  And periodically, customers would return the subject merchandise to Samsung, claiming the goods were defective.

On these general facts, Samsung filed a claim with Customs seeking an allowance for latent defects, and concomitant refund of duties, pursuant to 19 C.F.R. § 158.12. The cornerstone of its allowance claim is the fact that

Samsung sold all the subject merchandise with a consumer warranty that specifically covered latent defects. Under the warranty, when Samsung confirmed that returned merchandise contained a latent defect, the company repaired or replaced the goods at no charge to the customer. Samsung's warranty was effective for a period ranging from ninety days to one year from the date of sale to the customer, and longer warranties were provided for isolated components of the merchandise. See Pl.'s Undisputed Facts I, at ¶¶ 14-15.

Typically, Samsung processed the defective merchandise claims through two channels: (1) it sold the defective merchandise "as is" to outside "jobbers" at a discount, who then repaired the merchandise, removed the Samsung labels, and resold the merchandise for their own accounts; or (2) Samsung either performed in-house repairs or contracted with unrelated service centers to repair defective merchandise, and then returned the repaired goods to the customers. See Pl.'s Undisputed Facts I, at ¶ 22; Pl.'s Statement of Undisputed Material Facts Pursuant to USCIT R. 56(i), dated May 26, 1997 ("Pl.'s Undisputed Facts II"), at ¶ 9. Importantly, the consumer warranty at issue excluded coverage for all damage caused by mishandling or consumer misuse. See Pl.'s Undisputed Facts II, at ¶ 3; Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Br."), at Ex. 1.

Samsung and SEC also entered service agreements related

to the subject merchandise, whereby SEC reimbursed Samsung for
costs associated with defective merchandise purchased from
SEC.  Under the service agreements, SEC limited potential
reimbursement to an amount equal to five percent of SEC's
annual sales to Samsung.  For the years in question, SEC
reimbursed Samsung for an amount equal, on average, to 4.7% of
total annual sales of subject merchandise.  <u>See</u> <u>Samsung II</u>, __
Fed. Cir. (T) __, 106 F.3d at 378 (1997).

For purposes of this case, Samsung derived an allowance
figure from three separate accounting records that track
warranty costs and losses: (1) a combined record of total in-
house repair costs and costs paid to unrelated service centers
to repair merchandise; (2) a record of the cost of replacement
goods; and (3) a record of the discount prices at which
defective goods were sold.  From this data, Samsung calculated
its total warranty costs and losses for the year.[1]  Samsung
then used the total warranty costs and losses figure to
calculate the "Defective Merchandise Factor" ("DMF"), derived
"by dividing the total warranty costs and losses per year by
the total FOB value of merchandise for that year."  Pl.'s
Undisputed Facts II, at ¶ 17.  Samsung claims that the DMF is
an accurate measure of the value allowance it should receive

---

[1]     To compute its losses on discounted sales, Samsung
subtracted the discounted resale prices and any applicable
refurbishing costs from the original sale prices for defect-free
merchandise.

from Customs on the protested entries.  It asserts that the

average DMF for the years 1987 through 1990 is 6.37%, and

using that DMF, it should be awarded an allowance, and

concomitant refund of duties, in the amount of $ 1,938,451.

See Pl.'s Undisputed Facts II, at ¶ 21.

On prior cross-motions for summary judgment, this Court

ruled that Samsung was not due a section 158.12 allowance.

The Court held that when Samsung purchased the subject

merchandise from SEC, it contracted for merchandise that

contained latent defects and, hence, no allowance from

transaction value was appropriate.[2]  See Samsung I, 19 CIT at

1309, 904 F. Supp. at 1405.  The Federal Circuit reversed this

decision, concluding that Samsung had ordered defect-free

goods and therefore could maintain an allowance claim for

latent defects.  See Samsung II, __ Fed. Cir. (T) at __, 106

F.3d at 379.  The Federal Circuit, however, did not reach the

question of whether particular entries actually contained

defective merchandise and, if so, what the appropriate

allowance should be for the defects.  Instead, the Federal

Circuit remanded the case for this Court to ascertain whether

---

[2]     The Court also rejected Samsung's claim that the
repairs to the merchandise constituted post-importation
maintenance costs and, hence, should be deducted from the
appraised value of the goods pursuant to 19 U.S.C. §
1401a(b)(3)(A)(i) (1988).  See 19 CIT at 1310-11, 904 F. Supp. at
1405-06.  Although Samsung also appealed this aspect of
Samsung I, the Federal Circuit declined to address the argument
on appeal.  See __ Fed. Cir. (T) at __, 106 F.3d at 378 n.1.

"defects [were] in existence at the time of importation," id.
at __, 106 F.3d at 380 n.4, and "for a determination of the
'allowance [to be] made in value to the extent of the
damage.'"  Id. at __, 106 F.3d at 380 (quoting 19 C.F.R.
§ 158.12).

On remand, Samsung filed a partial summary judgment
motion, requesting that the Court endorse the average DMF of
6.37% as the appropriate measure of allowance.  Customs' filed
a cross-motion for summary judgment, contending that,
notwithstanding Samsung II, plaintiff is still not entitled to
an allowance in value because (1) Samsung's evidence fails to
demonstrate that subject entries actually contained latent
defects at the time of importation; and (2) the evidence fails
to establish the extent to which any defects that may have
been present decreased the value of the merchandise.

## II.
### STANDARD OF REVIEW

This test case is before the Court on cross-motions for
summary judgment.  The court will grant summary judgment "if
the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a matter of
law."  USCIT R. 56(d); Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 247 (1986).  Summary judgment, however, is not

appropriate when a party presents "a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant." Uqq Int'l, Inc. v. United States, 17 CIT 79, 83, 813 F. Supp. 848, 852 (1993) (citation omitted). And, a party opposing summary judgment must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions to file', designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Caterett, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(e)).

While it is true that Customs' appraisal decisions are entitled to a statutory presumption of correctness, see 28 U.S.C. § 2639(a)(1), when a question of law is before the Court, the statutory presumption of correctness does not apply. See, e.q., Universal Elecs., Inc. v. United States, __ Fed. Cir. (T) __, __, 112 F.3d 488, 492 (1997). There are no genuine issues of material fact at issue in this case nor are there factual elements of Customs' decision at issue and, hence, the statutory presumption of correctness is inapplicable. Thus, the Court must consider whether Customs' underlying appraisal decision here is correct as a matter of law.

### III.
### DISCUSSION

Under 19 C.F.R. § 158.12, a protestant qualifies for an

allowance in dutiable value where (1) imported goods are determined to be partially damaged at the time of importation, and (2) the allowance sought is commensurate to the diminution in the value of the merchandise caused by the defect. Specifically, section 158.12 provides as follows:

> Merchandise partially damaged at time of importation. (A) *Allowance in value.* Merchandise which is subject to ad valorem or compound duties and found by the district director to be partially damaged <u>at the time of importation</u> shall be appraised in its condition as imported, <u>with an allowance made in the value to the extent of the damage</u>.

19 C.F.R. § 158.12 (emphasis added).

To qualify for an allowance, a protestant must also satisfy <u>both</u> elements of the above provision by clear and convincing evidence. The clear and convincing standard is not provided for in 19 C.F.R. § 158.12. Rather, Customs has interpreted the regulation as requiring clear and convincing evidence. <u>See</u> C.S.D. 84-11, 18 Cust. B. & Dec. 849, 852 (1984) (requiring that "the importer must provide the concerned Customs officer with clear and convincing evidence to support a claim that merchandise purchased and appraised as one quality was in fact of a lesser quality, thus warranting an allowance in duties); <u>see also</u> HQ 546354 (July 19, 1996); HQ 544986 (Feb. 28, 1994); HQ 545231 (Nov. 5, 1993). The Federal Circuit also endorsed this evidentiary standard in <u>Samsung II</u>. <u>See</u> __ Fed. Cir. (T) at ___, 106 F.3d at 378 (deferring to Customs' interpretation of section 158.12).

Because the Court gives deference to Customs' interpretation of the evidentiary standard corresponding to section 158.12, see Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984), the Court reviews whether Samsung's proffered evidence satisfies both elements of the allowance provision by clear and convincing evidence.

As the Federal Circuit cautioned in its remand instructions, the amount of the allowance is limited to "those defects in existence at the time of importation, and not for instance, those caused by [Samsung's] own mishandling or by consumer misuse of the equipment." Samsung II, __ Fed.Cir.(T) at __, 106 F.3d at 380 (emphasis added). After reviewing the evidence, the Court grants Customs' motion for summary judgment.

It is uncontested that some of the merchandise Samsung entered between 1987 and 1990 contained latent defects. That is, simply by virtue of the fact that all merchandise entered between 1987 and 1990 was covered by the warranty and that claims were made on this warranty between 1987 and 1990, it follows that some of the merchandise contained in the subject entries was defective. Yet, Samsung's evidence fails to establish with any specificity which of the subject entries contained merchandise with latent defects at the time of importation.

More importantly, even if Samsung were able to identify

those entries that contained defective merchandise at the time of importation, its claim still fails because it offers no measure of precision upon which an appropriate allowance in value can be derived.  That is, Samsung simply offers no evidence to suggest that it can link diminution in the value of specific merchandise to specific entries.  Without some evidence that the allowance claimed actually relates to the specific entries at issue, a section 158.12 claim is lost. Consequently, Samsung's motion for partial summary judgment must fail, and defendant's cross-motion for summary judgment prevails.

   A.   **Samsung Fails to Establish by Clear and Convincing Evidence Which Entries Had Latent Defects at the Time of Importation.**

In lieu of specific descriptions or samples to illustrate damage at the time of importation, Samsung presents the consumer warranty for the subject merchandise as its principle evidence that entries contained defective merchandise at the time of importation.  In relevant part, the warranty at issue states the "Samsung product is warranted by [Samsung] against manufacturing defects in materials or workmanship."  Pl.'s Br., at Ex. 1.  Samsung also offers an internal document to show that it rejected warranty repair on certain returned merchandise and, therefore, asserts this is proof that the company only repaired latent defects under the relevant warranty.  Pl.'s Br., at Ex. 3.

The Court is unpersuaded that Samsung's evidence establishes by clear and convincing evidence which subject entries had latent defects at the time of importation, as required by section 158.12. As noted earlier, it is uncontested that at least some of the merchandise contained latent defects. The consumer warranty, and the corresponding claim records, indeed amount to conclusive proof of this fact. Yet, the warranty, and the claim records, fail to demonstrate with any particularity the precise entries that contained defects. Because the warranty covers <u>all</u> merchandise contained in all subject entries, it is impossible to accept the warranty, standing alone, as evidence of which particular entries had defects. And Samsung does not contend that <u>all</u> entries contained defective merchandise at the time of importation. Therefore, while establishing that <u>some</u> merchandise was defective, the warranty, in and of itself, does not establish <u>which</u> particular entries contained defective merchandise.

Moreover, the warranty indicates that the defects were not detected in the subject merchandise until customers made returns under warranty, quite some time after importation. Evidence provided in reappraisal cases, such as a 19 C.F.R. § 158.12 claim, is of greater weight when gathered contemporaneous with importation, and less so when time has passed between importation and protest. <u>See</u> <u>Parmentier's</u>

Roses v. United States, 39 Cust. Ct. 170, 173, 1957 WL 9559, at *3 (Cust. Ct. 1957) (noting that remoteness in time goes to the weight of evidence presented in reappraisal cases). The logic underpinning this rule is clear. Once Customs has liquidated merchandise, it can be damaged through a number of causes, including misuse or mishandling. This makes it difficult, or in some cases impossible, to identify the root cause of the damage or defect. Consequently, the more remote that an inspection is to the time of importation, the less persuasive that inspection is as evidence of the condition of the merchandise at the time of importation.

Here, the defects were only discovered when a customer submitted a warranty claim. Given the term of the warranty, this might be anywhere from ninety days to one year after the merchandise was sold to the customer. It is true that Samsung's warranty only covers repairs for defective merchandise, not merchandise damaged through misuse or mishandling. See Pl.'s Br., at Ex. 1. A Samsung executive also has stated that under the warranty, only merchandise with latent defects was repaired or replaced. See Pl.'s Br., Affidavit of Kang Bae Park, Samsung Tax and Accounting Manager, at ¶¶ 4-8. Although the Court has no reason to doubt the veracity of Samsung's assertions, without additional, independent evidence to corroborate the assertions, the Court cannot verify that the merchandise was actually defective at

the time of importation, as opposed to damaged later through misuse or mishandling.

A warranty surely may be used as supplementary evidence that a defect existed at the time of importation.  Yet, to prevail on a section 158.12 claim, more objective and verifiable evidence with some semblance of specificity must also be proffered.  Indeed, to make a section 158.12 claim, a claimant should provide specific descriptions of the damage or defect alleged and, in some manner, relate that defective merchandise to a particular entry.  Such descriptions are necessary because both the Court and Customs must independently confirm the validity of an allowance claim. And, descriptions or samples provide a reasonably objective basis upon which to assess such a claim.  For example, descriptions can be reviewed by the Court and by independent experts to confirm that the alleged damage existed at the time of importation, or that the damage is recognizable as a true manufacturing defect.  An undocumented assertion that damage existed, such as a warranty, cannot amount to clear and convincing evidence that defects existed at the time of importation.  See Esformes Packing Corp. v. United States, 61 Cust. Ct. 355, 1968 WL 11584, at *2 (Cust. Ct. 1968) (denying protests because it was impossible to deduce from the record evidence the existence of damage at the time of importation); see also HQ 546354 (July 19, 1996) (denying protests because

alleged defects in imported yarn and alkathene powder, respectively, were undetected in samples submitted to Customs, and claimants failed to submit any other independent testing).

For these reasons, the Court concludes that while it is uncontested that some of the subject entries had latent defects at the time of importation, Samsung fails to identify those particular entries that had latent defects at the time of importation.  Accordingly, the Court grants defendant's summary judgment motion on this issue.

> **B.    Samsung Fails to Show by Clear and Convincing Evidence That an Appropriate Allowance in Value Can be Calculated for the Alleged Defects in the Subject Entries.**

Even assuming arguendo that Samsung has proved by clear and convincing evidence that defects existed in all entries at the time of importation, its section 158.12 claim still fails because Samsung cannot demonstrate with any precision what the claimed allowance in value should be for the defective merchandise.  Here, Samsung argues that its total warranty cost and loss data provide an accurate measure from which an appropriate allowance for defective merchandise can be derived.  The Court concludes that it does not.

As evidence of the post-importation appraised value of the subject merchandise, Samsung offers its total warranty costs and losses for the year.  This data, however, fails to illuminate the extent of damage to merchandise contained in

subject entries for a number of reasons.  Samsung's repair records are not detailed enough to ascertain whether the costs incurred actually relate to the subject entries.  Most importantly, it is not apparent from Samsung's records that repair costs for the subject merchandise are segregated from repair costs for merchandise contained in other, non-subject entries.  That is, the total warranty cost and loss figure does not appear to segregate the costs and losses related to the subject merchandise from the costs and losses associated with other Samsung merchandise, whether by model or by year of sale.  For example, Samsung claims that its total warranty costs associated with 1987 claims is $4,243,033.16.  See Pl.'s Br., at Ex. 4.  Yet, Samsung claims an allowance on entries made between December 1987 and October 1990.  See Pl.'s Undisputed Facts I, at ¶ 2.  Samsung has not made it clear what portion, if any, of the warranty costs for the whole of 1987 corresponds to the entries made in December 1987.

Moreover, Samsung includes warranty costs for the years 1987 to 1990 in its DMF factor calculation.  As Samsung itself acknowledges, the warranty typically lasts for between ninety days to one year after the date of sale.  See Pl.'s Undisputed Facts I, at ¶¶ 14-15.  It is theoretically possible, though not likely, that all of the subject merchandise was sold out of inventory by the end of 1990.  Yet, the Court cannot envision how warranty claims for this same merchandise could

also have been made before the close of 1990, in which case
the warranty costs and losses for 1990 do not correlate to all
of the subject entries.  In other words, it is most likely
that merchandise contained in a 1990 entry was actually sold
in 1991 or even later, and warranty claims were actually made
in 1992 or even later.  As such, the warranty cost and loss
data for 1990 bear no direct relationship to the entries made
in 1990.  And, Samsung offers no evidence, or any indication
that it could, to correlate the warranty claims to the date of
sale and, in turn, to the subject entries.  Without some more
concrete temporal connection between the subject entries, and
the submitted warranty costs, only vague assumptions can be
made about the appropriate allowance for the defects in
subject entries.

If the Court were to accept otherwise, it runs the risk
of illegally assigning to the protested entries value
allowances for merchandise in non-protested entries and, in so
doing, would contravene the rule from <u>Alyeska Pipeline Serv.</u>
<u>Co. v. United States</u>, 10 CIT 510, 643 F. Supp. 1128 (1986),
<u>reh'g granted</u>, 11 CIT 931 (1987), <u>vacated as moot on other</u>
<u>grounds</u>, unpublished order (May 19, 1988).  In <u>Alyeska</u>
<u>Pipeline</u>, Customs had advanced the value of merchandise in a
single entry to cover value advances (i.e., reappraisements)
relating to twenty four additional entries of identical
merchandise, including two of which were not before the court.

See 10 CIT at 515, 643 F. Supp. at 1132.  The court rejected

this action, finding that "[t]he law does not permit the

Customs Service to assign one entry the values of merchandise

in other entries or the duties owing to them."  Id. at 516,

643 F. Supp. at 1132.  The court went on to conclude that "a

value adjustment to imported merchandise may be reflected only

on the entry or entries which cover the imported merchandise.

It follows that the only proper value increase for the entry

in question would be one reflecting the value of the

merchandise covered by that entry and no other merchandise."

Id. at 516, 643 F. Supp. at 1133.  Similarly, it also follows

here that a value allowance must relate to the merchandise

entered under a specific entry(ies).[3]  Instead, Samsung

_____

[3]     Samsung argues against the entry-by-entry approach,
noting that the value statue allows Customs to allocate the costs
of assists over as many entries as are impacted by the assist
and, hence, Customs should also be allowed to allocate an
allowance in value for defective merchandise over more than one
entry.  See Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at
14-15 ("Assists" are defined, inter alia, as materials,
components, parts, tools, or artwork supplied free of charge by
the buyer of the imported merchandise.  See 19 U.S.C. §
1401a(h)(1)(A)).  Yet, Samsung neglects to note that while the
value statute expressly provides for the apportionment of
assists, the statute is silent with respect to apportionment of
value allowances for defective merchandise.  See 19 U.S.C. §
1401a(b)(1)(C) ("The transaction value of imported merchandise is
the price actually paid or payable for the merchandise when sold
for exportation to the United States, plus amounts equal to . . .
the value, apportioned as appropriate, of any assist.").  In this
case, it is impossible for Samsung to tie the extent of damage
due to the defects to the subject entries with any particularity.
Yet, in those cases where it is possible to show that the amount
of damage claimed actually relates to a particular set of
entries, the Court takes no position on whether it is ever
permissible for Customs to calculate an allowance for defective

requests that a value allowance be granted to cover allegedly
defective merchandise contained in a slew of entries,
regardless of the fact that it cannot show which particular
entries contained defective merchandise, which contained more
or less defective merchandise, and which contained no
defective merchandise.  The Court cannot grant a blanket
allowance when the extent of damage claimed does not actually
correspond to the merchandise contained in a particular entry
or set of entries.

In addition, the total warranty cost and loss data
include the discounted sales made to outside jobbers.  The
value of discounted sales Samsung made to repurchasers of
damaged and refurbished merchandise bears, at best, a remote
relation to the difference in value resulting from the
defects.  Samsung fails to demonstrate that the discounted
price is an accurate measure of the extent of damage.  To
establish an appraisal by clear and convincing evidence, there
must be some way to segregate the diminution in value
attributable to the damage to the merchandise, from that
attributable to other discounts, e.g., volume discounts.  See
HQ 545534 (May 15, 1995) (rejecting an allowance for defective
merchandise under section 158.12 based on the difference
between the original sale price and the resale price because
there was no evidence to suggest that the discount bore any

merchandise using an allocation methodology.

relation to the extent of damage).

In sum, Samsung fails to show that it is possible to link the diminution in value due to defects in specific merchandise to any particular entry(ies). Hence, it is impossible to calculate an appropriate allowance in value for the defective merchandise. Accordingly, even if the Court were to accept that Samsung has established which entries contained defective merchandise at the time of importation, the Court still would grant summary judgment to defendant because Samsung cannot establish an appropriate allowance by clear and convincing evidence.

**V.**

**CONCLUSION**

For the foregoing reasons, Customs' decision not to grant plaintiff an allowance for defective merchandise is sustained, and summary judgment is granted in favor of defendant. Judgment will be entered accordingly.

_____
                         Richard W. Goldberg
                              JUDGE

Date:    January 6, 1999
         New York, New York.